BOHN MANUFACTURING COMPANY *vs.* WILLIAM H. SAWYER.

Worcester.     October 4, 5, 1897. — November 23, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Contract — Fire Insurance — Insurable Interest — Evidence — Exceptions.*

The vendee of goods has an insurable interest therein, although the title remains in the vendor until delivery.

If, after a proposal by A. to B., the latter's silence in respect thereto and his subsequent letters and conduct warrant the inference, in an action upon the alleged contract, that he assented to the proposal, and the jury find that such is the fair import of his correspondence and acts, or that A. believed and had reason to believe that B. did assent to it, his secret intention not to do so is immaterial.

No exception lies to the refusal to give instructions in the language requested, if they are given in substance and with a qualification which adds nothing that is injurious to the excepting party.

CONTRACT, to recover $603.34, one half the amount paid by the plaintiff for premiums on policies of insurance against loss by fire upon certain lumber.   Trial in the Superior Court, before *Gaskill*, J., who allowed a bill of exceptions, in substance as follows.

It appeared that the plaintiff paid the sums of money for various policies of insurance upon the lumber, according to the account annexed to its declaration, all of the payments being made between April 22 and August 9, 1893, with the exception of one payment made on October 16, 1893 ; and that the plaintiff credited the defendant in the account with the items shown in its account annexed, being returned premiums on policies cancelled which had been issued upon the lumber.

There was no controversy as to the fact of the payment of the premiums by the plaintiff at the time stated in the account annexed to the declaration.

To show the liability of the defendant to pay one half of the premiums, the plaintiff offered the following evidence.

A letter, dated February 25, 1893, from the plaintiff to the defendant, containing the following:   " We will sell you all our Plummer Mill run," at a price named, " on the following terms: Four months from the first day of each month for 70% of all

the lumber put in pile during the previous month, and the re-maining 30% 60 days from date of shipment; all the lumber to be shipped prior to November 1, 1893." The defendant accepted the proposition by telegram on March 14, 1893.

On March 27 the defendant wrote the plaintiff a letter which, after referring to the contract, contained the following: " I notice that the first of each month I am to advance 70 p. c. of the value of the lumber sawed the previous month. It does not state by whom estimated and value put upon same, Neither does it state whether the lumber is marked up to me, and if insured by you, and the loss to remain your own if burned before shipment. That has always been the custom with Mich-igan men, to keep the lumber insured until shipped at their risk. Suppose that would be the case with you."

On April 3 the plaintiff wrote the defendant a letter, which con-tained, among other things, the following: " As to the insurance, will say that this matter was not discussed at the time your " agent " was here, and in the absence of any agreement would suggest that we each stand one half the insurance, and on this understanding will have the insurance placed on the lumber and fully covered, and in issuing the policy will do so with the loss, if any, to be paid to you as your interest might appear. Upon receipt of your paper will mark the lumber as sold to you. Would thank you to execute your notes and send them to us on receipt."

On April 7, the defendant wrote the plaintiff a letter dis-cussing in detail the quantity and sizes of the lumber, and con-taining the expression, " I will try to mail the notes to you to-morrow," but making no reference to insurance; and again on April 15, the defendant wrote the plaintiff in the same way, saying nothing about insurance.

On April 22, the plaintiff wrote the defendant a letter, enclos-ing eight of the policies of insurance and an account charging the defendant with one half of the premiums thereon; and on May 3 the plaintiff wrote the defendant another letter, en-closing two more policies, and asking a return of one of the policies sent on April 22.

On May 6, the defendant wrote the plaintiff, enclosing the policy asked for by the plaintiff, as follows: " I enclose here-

with by request insurance policy cancelled by the Phœnix Insurance Company of London, and have substituted in its place those which you last sent, embracing insurance of $4,000."

On May 31, the plaintiff wrote the defendant, asking him to return two other policies on lumber, and on June 6, the defendant wrote the plaintiff, acknowledging receipt of the letter of May 31, and asking as follows: " Please advise if these policies have been recalled and others put in their place, or if not, the reason why you recall them"; to which the plaintiff duly replied on June 8.

On June 12, the defendant wrote the plaintiff as follows : " I enclose herewith the two policies which you required. Please return the two policies to take the place of these I now send." This letter contained the two policies.

On June 16, the plaintiff wrote the defendant, stating that the plaintiff held four new policies, aggregating $10,000, with loss payable to the defendant, and that one Crary, the agent, requested the plaintiff to hold them, as it was possible he might have to make some further exchanges.

On July 15, the plaintiff wrote the defendant, asking him to return two policies, and saying, " We have ordered other policies to take the place of these, which will be sent you in the course of a few days " ; and later again wrote the defendant, enclosing nine policies aggregating $24,500.

On July 22, the defendant wrote the plaintiff, enclosing a policy, as requested in the letter of July 15, and saying as follows : " Please send me a policy to take its place, and also send me policies which Crary sent you June 16, aggregating $10,000. I would like them all together."

On September 12, 1893, the defendant sent the plaintiff a letter, complaining of the conduct of the latter in respect to the lumber and the shipping and quality of it, and containing the following: " I am also informed that the insurance policies are nearly all cancelled that are sent to me. If such is the case I wish other policies put on until the lumber is delivered, and forwarded to me."

On September 16, the defendant wrote the plaintiff another letter, complaining of the plaintiff's conduct in respect to the lumber, and containing the following : " I understand that fires

are raging all through the woods, and lumber is liable to burn, and I also understand that you have cancelled the policies and made them over to Hyland. I want to know what you have done in this respect, and if any and how much is insured for my benefit. It is important that I know this at once, for I must be protected by insurance."

On June 12, 1894, the plaintiff drew on the defendant for the amount of the premiums charged to him in the account. The defendant refused to pay the draft, and claimed that he did not owe it. No letter or word was sent by the defendant refusing to pay, or claiming not to be liable, until after the final delivery of all the lumber.

The plaintiff called as a witness John A. Seeger, its vice-president, who testified that he had an interview with the defendant after the controversy had arisen, in which the defendant said that the amount of the charges for the insurance was correct; that he was not liable for and would not pay it; that the plaintiff's yard and mills were situated at Plummer, about one hundred and twenty miles from St. Paul, where the witness lived; that he went to the yard every month or six weeks; that he saw in the yard piles of lumber marked " W. H. S."; that the piles contained from fifteen to seventeen thousand five hundred feet each; that after April, 1893, he saw thirty to fifty piles that had been marked, and in May or June he saw a man marking piles, but could not tell how many; and that the plaintiff's yard was one and one half miles from the main line on the railroad, and a spur track owned by the railroad ran into the yard.

The lumber was all eventually shipped to the defendant, and the policies were all eventually cancelled.

The policies were all in the same form, and contained the following clause: " Does insure Bohn Manufacturing Company for one year . . . on lumber (lath and shingles, if any) owned by assured, or held in trust or on commission, or sold but not delivered, piled in yard." Each of the policies had a rider thereon in the following terms: " Loss, if any, under this policy payable to W. H. Sawyer, of Worcester, Mass., as his interest may appear."

The defendant, who was called as a witness by the plaintiff, was asked, on cross-examination, the following question: " I ask

you whether by that letter or by any silence of yours you intended to agree to pay half the premiums on these policies?" The letter referred to was the letter of March 27, 1893.

The judge excluded this evidence; and the defendant excepted.

The defendant asked the judge to rule as follows:

" 1. There is no sufficient evidence to warrant a verdict for the plaintiff.

" 2. On the evidence in this case the property in the lumber did not pass to the defendant until on the cars at Plummer, as provided in the proposition contained in the letter of February 25, 1893, and if it had burned in the plaintiff's yard, or before so placed on the cars, the loss would have been the plaintiff's as between it and the defendant.

" 3. Marking the piles of lumber, as testified to by Seeger, did not constitute a delivery under the contract disclosed by the evidence."

The judge declined to give the first ruling requested, and as to the second and third requests instructed the jury as follows:

" On the evidence in this case, provided you find the original contract not to have been changed, the property in the lumber did not pass to the defendant until on the cars at Plummer, as comprised in the proposition contained in the letter of February 25, 1895, and if it had been burned in the plaintiff's yard, or before it was placed on the cars, the loss would have been the plaintiff's as between it and the defendant. Marking the piles of lumber as testified to by Seeger did not constitute delivery under the contract as disclosed by the evidence, providing the contract remained the same as originally, without any change, and unless there was a specific contract between them that the title should so pass by the doing of that particular thing. The property was insured as the property of the plaintiff, and unless it was its property at the time it was insured it would not be valid, and the policy attached to the property only while it remained the property of the plaintiff."

The defendant excepted to the refusal to give the first ruling, and to the modification of the other rulings requested by him.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*F. P. Goulding,* (*W. C. Mellish* with him,) for the defendant.
*C. M. Rice,* (*H. W. King* with him,) for the plaintiff.

ALLEN, J.   The defendant had an insurable interest in the lumber, although the title remained in the vendor till delivery. *Wainer* v. *Milford Ins. Co.* 153 Mass. 335, 341, 342.   *Amsinck* v. *American Ins. Co.* 129 Mass. 185.

From the defendant's silence in respect to the plaintiff's proposal to effect insurance at their joint expense, and from his subsequent letters and conduct in respect to the policies, the jury might well infer that he assented to that proposal; and if the jury found that such was the fair import of his correspondence and acts, or that the plaintiff believed and had reason to believe that he did assent to it, his secret intention not to do so was immaterial.   *Hobbs* v. *Massasoit Whip Co.* 158 Mass. 194. *West* v. *Platt,* 127 Mass. 367, 372.

The second and third rulings which were requested were given in substance.   The qualification added nothing which was injurious to the defendant.                    *Exceptions overruled.*