NEW YORK TELEPHONE COMPANY, Appellant, *v.* JAMESTOWN TELEPHONE CORPORATION, Respondent.

Fourth Department, January 5, 1939.

*Lyman M. Bass* and *Edward L. Blackman* [*Thomas R. Wheeler* with them on the brief], for the appellant.

*Philip Halpern* [*Robert H. Jackson* with him on the brief], for the respondent.

SEARS, P. J. The plaintiff in this action seeks to recover a sum of money for services rendered under a written contract. The sole question involved is whether the contract was still subsisting at the date when the services were rendered for which the recovery is sought.

The plaintiff's telephone system extends over a large part of the State of New York. The defendant's telephone system is centered in the city of Jamestown, Chautauqua county, N. Y. Its lines extend a distance of about fifteen miles from the city.

On May 1, 1919, the parties entered into a contract to provide for the exchange of business so that messages carried over the telephone lines of one company might be carried further over the lines of the other and so to the ultimate receiver. The agreement for transfer was reciprocal. Thus, it was provided that a customer of the plaintiff might have his message delivered over connecting lines of the defendant, and *vice versa*. In order to carry this out, a physical connection had to be made between the wires of the respective parties; and, in operation, the electrical energy of each party was used to some extent over the lines of the other. The contract provided for payment for the respective services, one to the other. In computing the amount of payments to be made there was provision for a commission on all messages to the company originally receiving and transmitting a message and a division of service charges to every message on the basis of the length of lines of the respective parties employed, each party collecting the tariff charge from its own customer for the entire service rendered by both companies. Theoretically an accounting was to follow between the parties for the amounts due under the contract. As the number of messages ran into the tens of thousands, the accounting would necessarily have been voluminous, complicated and expensive beyond warrant. Therefore, the contract provided for a periodic determination of a percentage basis on business received and so transmitted based on experience which should stand in the place of the sum which might be determined upon an accounting. Before this percentage was first determined, the contract of May 1, 1919, was supplemented by an agreement dated March 3, 1920, by which, for certain specified services, not provided for in the agreement of May 1, 1919, the plaintiff agreed to pay the defendant $1,400 monthly. On March 11, 1920, the parties agreed that for all the services specified in the contract of May 1, 1919, the defendant should pay the plaintiff seventy-seven per cent of the toll charges on business originating on the lines of the defendant. This was a net percentage which covered the whole matter of accounting between the parties on whichever party's line the business originated and covered the entire service charge of each party to the other, except the $1,400 already mentioned.

The contract further provided that the defendant would accept the determination of toll charges to subscribers filed by the plaintiff with the proper public authorities. In fact it had previously

given the plaintiff a power of attorney to file the toll rates with the Public Service Commission.

The contract of May 1, 1919, contained these words: "* * * this agreement shall continue until the 1st day of May, 1929, and thereafter until the expiration of ninety (90) days after notice of termination given in writing by either party hereto to the other, unless terminated on said date by ninety (90) days' previous notice so given."

The contract of March 3, 1920, contained these words: "It is understood that the above agreement covers the period from May 1, 1919, and is to continue until the 1st day of May, 1920, and thereafter until terminated by thirty days' previous notice in writing by either party to the other."

The business was conducted between the parties on this basis, and after some years the defendant showed dissatisfaction with the amount it was retaining and receiving thereunder. Negotiations were had looking to a revision of the provisions in relation to the payment for the reciprocal services. The negotiations did not result in any modification of the contract and finally on the 27th day of November, 1931, the defendant gave the plaintiff written notice that pursuant to a resolution of its board of directors and pursuant to the section of the traffic agreement of May 1, 1919, the defendant canceled the traffic agreement effective March 1, 1932, and also the supplemental agreement effective the same date.

It is the contention of the defendant that as a result of this notice the traffic agreement, the supplementary agreement and all the provisions for payment terminated on March 1, 1932, while the plaintiff contends that the subsequent actions of the defendant were such that, despite the notice, the contracts remained subsequent to the last-mentioned date subsisting agreements relating to the payments to be made therefor.

On February 23, 1932, the general counsel of the plaintiff wrote to the general counsel of the defendant a letter containing the following paragraph: " In view of the notice which has been given by the Jamestown Telephone Corporation to terminate as of March 1, 1932 the existing traffic agreement with this company, we shall assume that if the Jamestown Corporation avails itself after said date of the toll line connections afforded by this company the commissions and compensation to be received by the Jamestown Corporation shall be determined in accordance with such method or basis of ascertainment as we may agree upon and that, pending such agreement, accounts between the two companies shall continue to be adjusted and paid monthly in accordance with the existing

basis, subject, however, to subsequent adjustment in accordance with such basis as may be so agreed upon to be in effect on and after March 1, 1932." The letter apparently was not directly answered. When the 1st of March, 1932, came the defendant did not disconnect its lines from the lines of the plaintiff but continued to receive and transmit telephonic communications received from the plaintiff and to transmit to the plaintiff telephonic communications received from its own subscribers. Neither of the parties applied to the Public Service Commission for a termination of the arrangements of the transferring facilities, nor did either revoke or take any steps to revoke the toll rates on file. Both companies continued to do business as before. When the plaintiff after March 1, 1932, on two occasions sent the defendant the amount agreed upon in the supplementary agreement of March 3, 1920, the checks for such payments were returned by the defendant to the plaintiff. The defendant made some payments to the plaintiff but not in accordance with the percentages previously agreed upon under the traffic agreement.

The record contains many details, but the foregoing are the salient facts and seem sufficient for an understanding of the respective claims.

The plaintiff contends that the conduct of the defendant on March 1, 1932, and subsequently, is wholly inconsistent with the termination of the contracts on that date and amounts to an abrogation of the notice of cancellation, or a waiver of it, and that, therefore, the defendant is indebted to the plaintiff for payment for services upon the contract terms. The defendant, on the other hand, contends that the cancellation was in full compliance with the terms of the contracts; that on March 1, 1932, they ceased to exist as binding agreements; that the services rendered after that date by either party to the other were rendered and are to be paid for on the basis of *quantum meruit*, and that no further act was necessary to terminate fully the binding force of the previously outstanding agreements. It calls to our attention the fact that each of the parties was a public service corporation; that interchange of traffic between them could be compelled by the public authorities; that in continuing the business at the toll rates as filed they were entering into contracts not with each other but with the customers of the respective parties and no act of the defendant was inconsistent with the abrogation and termination of the traffic agreement and supplemental agreements.

First, it must be noticed that under the terms of the agreements it was not necessary to have bilateral action to cancel and terminate them. To be sure the contracts did not expire or end by their own force, but provision was made in each of them for termination by

notice. No other act is specified in either agreement as prerequisite to termination. As far as the language of the contracts was concerned it must be conceded every act prerequisite to termination was performed by the giving of the written notice. Thus, a situation came about which was in all respects, in our opinion, equivalent to that which would have existed had the contracts provided in terms that they were to terminate on the 1st day of March, 1932. (Compare *Miller* v. *Levi*, 44 N. Y. 489; *Burnee Corporation* v. *Uneeda Pure Orange Drink Co., Inc.*, 132 Misc. 435.) If such had been the case, it is clear under the authorities that a continuance of business relations, with traffic interchange after that date, would not have resulted in a continuation of the contracts. (*Harlem Gaslight Co.* v. *City of New York*, 33 N. Y. 309; *Northern Westchester Lighting Co.* v. *Village of Ossining*, 179 App. Div. 135; *Queens County Water Co.* v. *City of New York*, 186 id. 512. And see *Foster* v. *White*, 279 N. Y. 38.)

The defendant after the 1st day of March, 1932, has made no claim in relation to payment inconsistent with the termination of the contracts in every respect. It would have the right to transfer its business to the company capable of forwarding beyond the defendant's lines the toll messages of its subscribers. It would be under obligation, enforcible by the Public Service Commission, to accept and forward communications from the subscribers of the plaintiff. These acts do not recognize a subsisting contract. They recognize an obligation to customers whether the customers initially used defendant's lines or lines of the plaintiff. We find nothing in the record showing any intention, express or necessarily implied from its conduct, to warrant a conclusion that the contracts were not terminated. On the contrary, the plaintiff by the letter of its general counsel quoted recognized the termination and had in view a continuance of traffic interchange. This is noteworthy even though the defendant did not accede to the plaintiff's proposition for continuance of payments upon the previous contract basis subject to ultimate revision.

For these reasons we reach the conclusion that the traffic agreement of May 1, 1919, and the supplemental agreement of March 3, 1920, were fully at an end on the 1st day of March, 1932. The plaintiff has based its demand for payment solely upon the terms of these agreements. It has disclaimed any right to recover in this case on the basis of the value of the services performed.

Therefore, the judgment should be affirmed, with costs.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, TAYLOR and DOWLING, JJ.

Judgment affirmed, with costs.