**HAWES OFFICE SYSTEMS, INC., Plaintiff,**

v.

**WANG LABORATORIES, INC., Defendant.**

**No. 80 C 1070.**

United States District Court, E. D. New York.

Oct. 19, 1981.

Collard, Roe & Malcolm by Allison C. Collard, Roslyn, N. Y., for plaintiff.

Towne, Dolgin, Furlaud, Sawyier & Owen by Robert D. Owen, and Sullivan & Cromwell, by James W. Dabney, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Hawes Office Systems, Inc. (Hawes), a New York corporation, was formed in 1979 to market certain word processing and photo-typesetting equipment manufactured by Wang Laboratories, Inc. (Wang), a Massachusetts corporation. Plaintiff Hawes, asserting jurisdiction under 28 U.S.C. § 1332 and 15 U.S.C. § 15a, seeks damages based on Wang's alleged violation of the federal antitrust laws and breach of contract. The action is now before the Court on Wang's motion for partial summary judgment.

Summary judgment may be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. Pursuant to the 1963 amendments, Rule 56(e) provides that when a motion for summary judgment is supported by proper affidavits (or by the other materials referred to in Rule 56(c)), "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

In determining whether to grant a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967), *on remand,* 446 F.2d 1131 (2d Cir. 1971), *cert. denied,* 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972), *quoted in SEC v. Research Automation Corp.,* 585 F.2d 31, at 33 (2d Cir. 1978). It must accept as true factual statements in the opposing party's affidavits, draw all permissible inferences in that party's favor, *Hill v. A–T–O, Inc.,* 535 F.2d 1349 (2d Cir. 1976), and resolve any doubts in favor of the latter, *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., supra.*

With the foregoing principles in mind, the Court is of opinion that partial summary judgment is appropriate. The factual disputes raised by Hawes' opposing papers are immaterial to disposition of the legal questions at hand; hence, there is no genuine need for trial.

*The Contract Claims*

In January 1979 Hawes entered into an agreement (1979 Agreement)[1] with Wang to sell certain of the latter's word processing equipment in Long Island and New York City, excluding Manhattan. A year later the parties entered into a second agreement (1980 Agreement),[2] in which Hawes contracted to sell certain other equipment manufactured by Wang to publishing and typography industries in Manhattan and Long Island. Both agreements established an initial term of one year, renewable for an additional year upon written notice by both parties. In addition, both agreements established Wang's right to terminate under certain circumstances, including Hawes' non-performance of its obligations. However, only the 1979 Agree-

1. The 1979 Agreement and the addendum thereto are reprinted in Defendant's Notice of Motion, App. A.

2. The 1980 Agreement is reprinted in Defendant's Notice of Motion, App. B.

ment included an addendum that "Wang can not terminate for non-performance if quota is met." Addendum to 1979 Agreement § 2. The meaning of the latter provision became the crux of the present dispute when Wang failed to notify Hawes in January 1981 that it wished to renew, even though Hawes had met the sales quota established for 1980 ($300,000).

Wang seeks dismissal of the complaint insofar as it claims that Hawes "has a perpetual right to represent Wang and market its products." Defendant's Notice of Motion § (i). In fact, plaintiff never alleged such a right,[3] but the substance of Wang's motion is clear: the Court must determine whether the conditions for renewal of the agreements were satisfied, or whether the agreements expired according to their terms, cutting off plaintiff's contractual rights in January 1981.

At the outset, plaintiff admits that the 1980 Agreement expired on January 1, 1981, but offers evidence that the parties intended § 2 of the addendum to the 1979 Agreement to prevent expiration of the latter as long as Hawes met the sales quota each year. Countering, defendant claims that plaintiff's proffered extrinsic evidence cannot be used to determine the meaning of § 2 because the contract is internally consistent and unambiguous on its face. Put simply, the question before the Court is whether plaintiff may tender evidence outside the written terms of the agreement that the parties intended the restriction on termination to apply equally to expiration. For if so, and if such evidence is sufficient to raise a genuine issue of material fact, then summary judgment is impermissible. But if not, interpretation of the disputed provision becomes a question of law, rendering trial on that issue unwarranted.

Whether the agreement is integrated is the initial issue, because "[w]hen a jural act is embodied in a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their act." 9 Wigmore on Evidence § 2425, at 76 (3d ed. 1940); *see also*, 3 Corbin on Contracts § 573 at 357 (1960). Since § 10 of the 1979 Agreement states, "This document represents the total Agreement of the parties, except for the Addendum attached," a presumption of integration arises. For under Massachusetts law,[4] when

"a writing shows on its face that it includes the whole agreement of the parties and comprises all that is necessary to constitute a contract, it is presumed that they have placed the terms of their bargain in this form to prevent misunderstanding and dispute, intending it to be a complete and final statement of the whole transaction. And all their stipulations relating to its subject matter are to be found within the written instrument.

'The rule forbidding the introduction of parol testimony to vary or contradict a written agreement is not merely one of evidence, though commonly, perhaps, so spoken of, but one of substantive law, and rests upon the doctrine that when parties have deliberately put their agreements in the form of a written contract they shall not be allowed to show that the agreement was something else.' *Mears v. Smith*, 199 Mass. 319, [322], 85 N.E. 165 [166]."

*Glackin v. Bennett*, 226 Mass. 316, 319–20, 115 N.E. 490, 491 (1917), *quoted in Poskus v. Braemoor Nursing Home, Inc.*, 6 Mass.App. 896, 377 N.E.2d 705, 706 (1978). Because plaintiff has offered no evidence to rebut the presumption, but only asserts the parties intended a different meaning than the

---

3. The relevant portions of plaintiff's allegations are found in two identical paragraphs which state:

"It was the understanding of the parties that, though the Agreement was limited to a one-year term with an option to extend it for an additional year, there would be continuing one-year renewals of the Agreement as long

as Plaintiff performed satisfactorily in meeting reasonable sales quotas and there were no other grounds of termination for cause." Plaintiff's First Amended Complaint, ¶¶ 5, 16.

4. Section 10 of the 1979 Agreement provides that "[i]t shall be governed by the laws of the Commonwealth of Massachusetts . . . ."

**614**

one normally associated with the word "terminate," the writing is an integration of the agreement.

■ Where the terms of an integrated contract are plain and clear, "previous and contemporaneous oral agreements and written memoranda cannot be used to contradict or modify those terms." *Poskus v. Braemoor Nursing Home, Inc., supra,* 377 N.E.2d at 706. Rather, the terms must be construed in their ordinary and usual sense. *Geehan v. Trawler Arlington, Inc.,* 547 F.2d 132 (1st Cir. 1976); *Sav-Mor Supermarkets, Inc. v. Skelly Detective Service, Inc.,* 359 Mass. 221, 268 N.E.2d 666 (1971). Further, "interpretation of an integrated agreement is a matter of law," and "is directed to the meaning of the terms of the writing in the light of the circumstances, not to the meaning of the conversations of the parties in the course of their negotiations." *Robert Industries v. Spence,* 362 Mass. 751, 753, 291 N.E.2d 407, 409–10 (1973).

■ To begin, we see neither ambiguity nor operative inconsistency in the terms "renew" and "terminate" as used in the agreement. Because the provisions distinguish expiration for non-renewal in § 1 from termination for non-performance in § 7, reiteration of the term "terminate" in the addendum plainly connotes "to end formally and definitely," Webster's Third International Dictionary 2359 (1971), rather than "to allow to expire."

■ Since the terms of the agreement appear free from ambiguity, plaintiff may not tender extrinsic evidence which will modify or contradict their meaning. *Poskus v. Braemoor Nursing Home, Inc., supra.* Evidence which will aid in interpretation is not precluded, except where such evidence would cause inconsistency in the contract when viewed in its entirety. For we must give to *all* the provisions of the contract "a reasonable meaning," rather than interpret the agreement in a way which "leaves a part useless or inexplicable." *Sherman v. Employers' Liability Assurance Corp.,* 343 Mass. 354, 355, 178 N.E.2d 864, 866–67 (1961).

Since § 1 of the agreement addresses term and renewal, and § 7 addresses termination, it is reasonable to interpret the addendum provision as limiting § 7 and not § 1. The fact that the addendum uses the phrase "terminate for non-performance" makes such construction eminently reasonable, because § 7 specifically addresses Wang's right to terminate for Hawes' non-performance. Further, construing "terminate" to mean "allow to expire" would render the agreement self-renewing as long as the sales quota were met; yet self-renewal would not only obviate the requirement for mutual consent and written notice established for renewal under § 1, it would also conflict with the requirement for annual re-negotiation of plaintiff's sales quota under § 4. Such construction, harmful to the integrity of the contract, should be avoided when the instrument on its face suggests a more consistent approach.

Examination of the circumstances as required by the court in *Robert Industries, supra,* necessitates the same conclusion. Accepting plaintiff's allegations as true, it appears Mr. Hawes, seeking to minimize the financial risks of plaintiff, submitted for Wang's consideration an addendum provision for automatic renewal if the quota were met. But the provision was rejected by Wang, and Mr. Hawes subsequently agreed to the present provision couched not in terms of renewal but termination for non-performance. Mr. Hawes' change of position indicates far more reliably the parties' intent at the time of the contract than does his subsequent testimony as to conversation in the course of negotiation.

■ Accordingly, plaintiff's extrinsic evidence is immaterial to determination of the instant question of law: interpretation of the integrated contract. Hence, no material fact dispute exists in relation to the parties' intended meaning of the contractual terms. Interpreting the agreement in a manner consistent with ordinary understanding and the contractual scheme, the Court is of opinion that plaintiff's contractual rights extinguished when defendant failed to provide written consent to renewal

prior to the established expiration date. Defendant's motion is therefore granted to the extent of dismissing plaintiff's first and second claims alleging contractual rights subsequent to expiration of the 1979 Agreement on January 25, 1981, and the 1980 Agreement on January 1, 1981.

*The Antitrust Claims*

Although plaintiff has stipulated that its claim under the Robinson-Patman Price Discrimination Act is unfounded, its claims under the Sherman and Clayton Antitrust Acts, 15 U.S.C. § 1 *et seq.*, remain intact. Alleging that the 1979 and 1980 Agreements "were and are in restraint of trade and discriminated in services," Plaintiff's First Amended Complaint ¶ 22, Hawes claims restrictions in price, territory and customers resulting from the agreements comprise per se antitrust violations. Further alleging that the agreements, though "agency agreements" in form, constitute dealer agreements in substance, the amended complaint lists various acts of "independent" business conduct allegedly required to be performed by Hawes under the agreements.

■ Wang has moved for partial summary judgment dismissing the claims under § 1 of the Sherman Act. Such motion can be granted

"only if the reviewing court is satisfied that a properly instructed jury, giving full weight to plaintiff's evidence, drawing every reasonable inference in its favor, and subjecting defendants' evidence to a critical eye, could not rationally have found that plaintiff was entitled to any relief."

*Ambook Enterprises v. Time, Inc.*, 612 F.2d 604, 611 (2d Cir. 1979), *cert. dismissed sub nom. Ambook Enterprises, aka American Book Club v. Time, Inc.*, 448 U.S. 914, 101 S.Ct. 35, 65 L.Ed.2d 1179 (1980) (citations omitted); *see also, United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam* ).

■ In substance, Wang contends that the agreements comprised agency agreements by their terms, and that such con-

tracts cannot constitute a "contract, combination or conspiracy" under the Sherman Act, 15 U.S.C. § 1. We find Wang's argument in the context of summary judgment proceedings premature, for neither party has supported its position with depositions, answers to interrogatories, admissions or affidavits as provided by Rule 56(c), F.R. Civ.P. Instead, the parties rely on unsupported statements of fact that the agreements are or are not agency contracts. No evidence based on personal knowledge has been submitted. In this light, resolution of the dispute appears to require further development of facts.

Since the Supreme Court, in *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), recognized that merely labelling a business relationship an agency cannot preclude application of the Sherman Act, and because Wang has not definitively shown that Hawes is entitled to no relief under § 1, summary dismissal of the antitrust claim is inappropriate. Accordingly, this aspect of defendant's motion is denied.

SO ORDERED.