**HAWES OFFICE SYSTEMS, INC., Plaintiff,**

v.

**WANG LABORATORIES, INC., Defendant.**

**No. 80 CV 1070.**

United States District Court, E. D. New York.

April 23, 1982.

See also, D.C., 524 F.Supp. 610.

Collard, Roe & Malcolm by Allison C. Collard, Roslyn, N. Y., for plaintiff.

Towne, Dolgin, Furlaud, Sawyier & Owen by Robert D. Owen and Sullivan & Cromwell by James W. Dabney, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

By memorandum and order dated October 19, 1981, *Hawes Office Systems, Inc. v. Wang Laboratories, Inc.*, 524 F.Supp. 610 (E.D.N.Y.1981), the Court granted defendant's motion for partial summary judgment to the extent of dismissing plaintiff's allegations of "contractual rights subsequent to expiration of the 1979 Agreement on January 25, 1981, and the 1980 Agreement on January 1, 1981." *Id.* at 615. While the previous motion focused on abridgement of plaintiff's contractual rights subsequent to January 1981, the present motions concern the viability of the 1979 Agreement during the twelve month period commencing January 25, 1980. Contending that the parties impliedly renewed that agreement for a second term, plaintiff moves for summary judgment upon its claims that (1) Wang remained bound by the agreement until January 25, 1981, and (2) Hawes is entitled to a percentage of the commission on sales made in its territory through January 25, 1981, irrespective of its contribution. In response, defendant cross-

moves for summary judgment dismissing the complaint insofar as it claims (1) the 1979 Agreement remained in force after January 25, 1980, (2) Hawes is entitled to payment for sales to which it made no contribution, and (3) Hawes is entitled to punitive damages on its contract claims.[1]

The Court previously determined that the 1979 Agreement comprised an integration of the parties' agreement, interpretation of which is a matter of law. 524 F.Supp. at 613–14. "Interpreting the agreement in a manner consistent with ordinary understanding and the contractual scheme," we held that "plaintiff's contractual rights extinguished when defendant failed to provide written consent to renewal prior to the established expiration date." *Id.* at 614–15. The facts before the Court upon which the holding was premised indicated an utter absence of transaction between the parties, except in the context of litigation, subsequent to the second twelve month term authorized by the agreement. Absent continued performance of obligations under the agreement, reasoned construction required the conclusion that the lack of mutual written notification caused the agreement to expire. Since the instant motions concern a different factual context, *viz.*, conduct apparently pursuant to the contract after expiration of the initial term, the previous holding is inapposite.

The material undisputed facts follow. Hawes and Wang entered into the 1979 Agreement on January 25, 1979 and operated under its provisions with no apparent conflict through the initial term. By letter dated January 25, 1980, Hawes informed Wang that the $300,000 annual sales quota established by the 1979 Agreement had been met and requested Wang's acceptance of a $600,000 quota for "the next fiscal year period beginning May 1980." Pl.Exh.B. Although Wang did not respond, Hawes continued its sales efforts, and in the next five weeks Wang accepted nine new sales orders, totalling $105,557, from Hawes. By letter dated March 31, 1980, Wang advised Hawes that the latter had "violated the terms and conditions" of the 1979 Agreement and that the agreement "is hereby terminated as provided for by paragraph 7(b) of the 25 January 1979 agreement." Pl.Exh.F. On April 18, 1980, plaintiff commenced the instant litigation. By letter dated May 1, 1980, Wang "rescind[ed]" the March 31 notice of termination and "contend[ed]" that the agreement had expired by its own terms on January 24, 1980. Def. Notice of Cross-Motion, Exh.D. Between May and August 1980, the parties pursued negotiation of a new agreement, and Wang continued to accept sales orders from Hawes. Def. Notice of Cross-Motion, Doretti Affidavit.

On the basis of the parties' course of conduct from January 25 to March 31, 1980, plaintiff argues that the agreement was impliedly renewed. Defendant counters with the argument that mutual written notification comprised the sole means of renewal, that the contract therefore expired by its terms on January 24, 1980, and that whether the parties' transactions subsequent to expiration gave rise to a new implied contract remains a disputed question of fact. Further, defendant asserts that notwithstanding the proviso in § 10 that the agreement "shall be governed by the laws of the Commonwealth of Massachusetts," the existence of an implied contract "would doubtless be controlled by

---

1. Defendant contends that Hawes' failure to plead the claims *sub judice* defeats any possibility of seeking summary judgment thereon. Def. Mem. in Opp. at 6, n.9. However inartfully pleaded, the complaint provides sufficient notice that the breach of contract claim is premised on conduct by Wang subsequent to expiration of the initial twelve month term. A necessary predicate for such breach is the contract's viability during the second twelve month period. Wang having received fair notice of the claim asserted, the principal function of pleading under the modern rules has been fulfilled. See 2A Moore's Federal Practice ¶ 8.13 at 8–103 (2d ed. 1982). Therefore, Hawes is entitled under F.R.Civ.P. 56(a) to move for partial summary judgment on the predicate issue. Regarding the claim for sales commissions, the complaint expressly seeks damages for "commissions remaining unpaid ... on equipment sold by others than Plaintiff in its territory." 1st Amd. Complaint at 13. Thus, this claim too is properly before the Court.

New York law." Def. Mem. in Opp. at 10, n.14.

Addressing the choice of law question first, the Court perceives no reason for departure from the parties' stipulated choice of law. Applying New York conflict of laws principles, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), absent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction. See, *e.g., CBS, Inc. v. Tucker*, 412 F.Supp. 1222, 1226, n.5 (S.D.N.Y.1976); *Business Incentives Co. v. Sony Corp. of America*, 397 F.Supp. 63 (S.D.N.Y.1975); 19 N.Y.Jur.2d, Conflict of Laws § 33 (1982). Massachusetts is the law of execution as well as defendant's incorporation; hence, strong connections exist. In the circumstances, Massachusetts law governs the primary inquiry: construction of the agreement to determine whether renewal was authorized by any means other than mutual written notification.

The critical provision is found in § 1 of the agreement,[2] which establishes the "initial term" as twelve months, commencing January 25, 1979, and provides that the "Agreement can be renewed for an additional year if both parties notify the other . . . ." Pl.Exh.A. Examining the "plain meaning" of the language, see *Geehan v. Trawler Arlington, Inc.*, 547 F.2d 132 (1st Cir. 1976); *Save-Mor Supermarkets, Inc. v. Skelly Detective Service, Inc.*, 359 Mass. 221, 268 N.E.2d 666 (1971), in the absence of any adjective denoting exclusivity, § 1 unambiguously authorizes written notice as a permissible method of renewal without foreclosing alternative methods. Viewing the contract in its entirety, *Sherman v.*

*Employers' Liability Assurance Corp.*, 343 Mass. 354, 178 N.E.2d 864 (1961), an alternative method of renewal would be consistent with the contractual scheme so long as it involved manifestation of mutual assent and allowed for annual re-negotiation of the sales quota under § 4.

Alternatively, if the language of § 1 is perceived as ambiguous, to construe its intended meaning we look to the parties' conduct. For it is established law in Massachusetts that "[t]he interpretation placed upon the contract by the parties as evidenced by their conduct is entitled to great weight." *Atwood v. City of Boston*, 310 Mass. 70, 37 N.E.2d 131, 134 (1941); *Wit v. Commercial Hotel Co.*, 253 Mass. 564, 149 N.E. 609 (1925). Here the undisputed facts show that the parties continued dealing with each other subsequent to expiration of the initial term with no apparent hesitation or distinction, despite the absence of written notice. Indeed, during this period of continued performance, Wang acquiesced to benefits under the contract in the face of Hawes' unequivocal offer to renew its sales commitment. Therefore, the parties' course of conduct demonstrates their practical interpretation of § 1 to authorize renewal by mutual assent without written notice. This perception is confirmed by Wang's subsequent termination letter. An expired contract can neither be violated nor terminated. Moreover, Wang's acceptance of orders between May and August 1980, after it had announced its position on expiration of the agreement, is not inconsistent with the parties' practical interpretation of the agreement, because conduct during litigation is wholly irrelevant to prior contractual intent.

The question remains whether renewal in fact occurred.[3] Before reaching

---

**2.** Section 1 reads in pertinent part:

"1. TERM

The initial term of this agreement shall be 12 months commencing January 25, 1979 . . . . This non exclusive Agreement can be renewed for an additional year if both parties notify the other party in writing that they wish to extend the Agreement for an additional twelve (12) months." Pl.Exh.A.

**3.** Since no legal distinction is discerned between implied renewal of the original agreement and implied assent to a new agreement containing the identical terms, we use the word "renewal" to refer to either circumstance: rejuvenation or resurrection.

the propriety of summary judgment on this issue, we turn to a discussion of the law on permissible inferences from the parties' continued performance. At common law, courts may infer agreement to renew an express contract from continued performance after expiration of a set term. 1 Corbin on Contracts § 18, at 43 (1963). Massachusetts permits the inference at least in employment contexts, see, *e.g., Mahoney v. Hildreth & Rogers Co.*, 332 Mass. 496, 125 N.E.2d 788 (1955); *Allen v. Chicago Pneumatic Tool Co.*, 205 Mass. 569, 91 N.E. 887 (1910), and common sense supports the implication in services and agency contexts as well. *Cinefot Int'l Corp. v. Hudson Photographic Industries*, 13 N.Y.2d 249, 196 N.E.2d 54, 246 N.Y.S.2d 395 (1963). *Accord, Spencer v. General Electric Co.*, 243 F.2d 934, 938 (8th Cir. 1957) (applying Missouri law); *cf., Otten v. San Francisco Hotel Owners Ass'n.*, 74 Cal.App.2d 341, 168 P.2d 739 (1946) (presumption applies exclusively to master-servant relationship). Though never compelled, the inference is eminently reasonable and just, and often rises to the level of presumption. See, *e.g., Steranko v. Inforex, Inc.*, 5 Mass.App. 253, 362 N.E.2d 222 (1977) (applying New York law).

Defendant relies on a line of cases stemming from the purported holding in *New York Telephone Co. v. Jamestown Telephone Corp.*, 282 N.Y. 365, 26 N.E.2d 295 (1940), for the proposition that the conduct of the parties may at most imply a new contract, not a renewal of the original. *New York Telephone* concerned a contract between a state-wide and a local telephone company which fixed the joint obligations of the parties regarding their interconnecting long distance wires and services. The contract provided that either party could terminate the agreement by written notice, and it was undisputed that both parties continued to perform and receive the services after defendant had given such notice. Plaintiff sought to recover under the express contract for services rendered subsequent to termination, but the trial court dismissed the complaint. The Appellate Division affirmed, concluding that the contract was "fully at an end" upon the effec-

tive date of defendant's notice. 256 App. Div. 1, 5, 8 N.Y.S.2d 948, 952 (4th Dept. 1939). The issue before the Court of Appeals was whether the notice of termination was "withdrawn or rendered ineffective by the subsequent acts of the defendant." 282 N.Y. at 371, 26 N.E.2d at 297. In obiter dictum the Court of Appeals expounded the theory of implied contract upon which Wang relies so heavily. The holding was that defendant's liability for services rendered subsequent to the notice of termination cannot be measured by the terms of the express contract, because "[n]othing occurred ... which dictates or, indeed, permits an inference that the defendant intended to withdraw its notice." 282 N.Y. at 372, 26 N.E.2d at 297.

The holding in *New York Telephone* is wholly inapposite to the instant question whether continued dealings after expiration of an initial term can imply renewal. A fundamental of the decision was the effective notice of termination which *ended* the contract. Noting that the parties' continuation of joint services for the public was required by law, the court found such continuation consistent with defendant's express repudiation of the private agreement. If *New York Telephone* is to apply at all to the issue at hand, it must be for the recognition of common law principles that intent to contract, as well as the terms of an implied agreement can be inferred from conduct, and that even express notice of termination may be negated by inconsistent acts. As always, the key concept is application of the relevant legal principles to the particular facts before the court.

■ As movant for summary judgment, Hawes has the burden "to demonstrate the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975). As explained by the Court of Appeals in *Schwabenbauer v. Board of Education*, 667 F.2d 305, 314 (2d Cir. 1981), the cross-motion by defendant for summary judgment on the same issues does not modify plaintiff's burden:

"Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."

Examining plaintiff's submissions on its motion, only one reasonable inference can be drawn: the parties mutually assented to renewal of the 1979 Agreement for an additional term, with an increased sales quota of $600,000.

■ The same documents which evidence the parties' practical interpretation of the renewal clause conclusively support the fact of renewal. First, the admitted acceptance by Wang of sales by Hawes in February and March 1980, evidenced by Wang work orders and invoices the authenticity of which is established by affidavit of George T. Hawes, Pl.Exh.E, indicates Wang's continued acceptance of benefits under the 1979 Agreement after the initial term expired. Second, Hawes unequivocally offered on January 25, 1980 to continue performance of its sales obligations and to increase its sales quota to $600,000 for the following fiscal period. Pl.Exh.B. Wang's response of silence permits the inference that it assented to Hawes' proposal, see, e.g., Wheeler v. Klaholt, 178 Mass. 141, 59 N.E. 756 (1901); Bohn Mfg. Co. v. Sawyer, 169 Mass. 477, 48 N.E. 620 (1897), and in the circumstances of Wang's acquiescence to plaintiff's continued performance no other reasonable inference can be drawn. Third, through its express termination of the contract on March 31, 1980, Pl.Exh.F, Wang exercised its rights under the agreement, thereby impliedly admitting the contract's current operation. In sum, plaintiff has presented undisputed evidence of the parties' continued course of dealing, of Wang's failure to relinquish benefits derived from the contract, of Wang's silence in response to an offer in circumstances which require an inference of acceptance, and, finally, of Wang's express exercise of rights under the contract. No reasonable inference against plaintiff can be drawn from the evidence it has presented.

Bearing in mind the caution in Schwabenbauer v. Board of Education, supra, at 313, that "[n]ot only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy as to the inferences to be drawn from them," quoted in EEOC v. Home Ins. Co., 672 F.2d 252 at 256 (2d Cir. 1982), we examine whether defendant has set forth specific facts which genuinely controvert the inference drawn. The two relevant submissions are Wang's letter dated May 1, 1980, in which it "rescinds" the notice of termination and maintains that the agreement expired, Def. Notice of Cross-Motion, Exh. D, and a sworn statement by Robert L. Doretti, vice-president of Wang's U.S. operations, that "Wang did not elect to renew the 1979 Agency Contract," Doretti Affidavit ¶ 6. It appears Doretti has personal knowledge of the 1979 Agreement, since it was he who recommended entering into the contract, Def. Notice of Cross-Motion, Exh. A, to whom Hawes' January 25, 1980 letter was addressed, and from whom Wang's May 1, 1980 rescission of termination was received.

■ Defendant cannot raise triable issues merely by asserting conclusory statements contained in correspondence or affidavits prepared subsequent to commencement of litigation. Rather, the non-movant must come forward with specific facts and "concrete particulars" showing a genuine need for trial. Dressler v. MV Sandpiper, 331 F.2d 130, 133 (2d Cir. 1964). Plaintiff's evidence focuses on the parties' conduct immediately after expiration of the initial term, and a jury could come to no reasonable conclusion other than that such conduct manifested mutual assent to renewal. To demonstrate the need for trial, defendant must have presented evidence which would allow alternative reasonable inferences to be drawn. Yet it has failed to present even a scintilla of evidence which controverts the inference of mutual assent, relying instead on unsupported pronouncements, during the course of litigation, of defendant's past intent not to renew. Without supporting facts, such pronouncements cannot create a genuine controversy as to the issue of assent.

Turning to Wang's motion to dismiss plaintiff's claims for punitive damages, we note first that under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we must follow the law of the forum State on the right to such relief. See 1A, Pt 2 Moore's Federal Practice ¶ 0.310, at 3139 (2d ed. 1982). However, as already indicated, New York courts would honor the parties' stipulation to Massachusetts law. It is well established law in Massachusetts that "exemplary damages are not allowed unless authorized by statute." *Lowell v. Massachusetts Bonding & Ins. Co.,* 313 Mass. 257, 47 N.E.2d 265, 272 (1943). *Accord, Caperci v. Huntoon,* 397 F.2d 799, 801 & n.2 (1st Cir.), *cert. denied,* 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968). Since plaintiff has not cited any statutory provision which would permit punitive damages in the circumstances of this case, and search of the Massachusetts statutory compilations reveals no such provision, defendant's motion is granted.

Finally, we address the parties' motions on plaintiff's claim to damages based on unpaid commissions for sales made by others within the territory assigned Hawes by the 1979 Agreement. The Court finds the addendum provision which establishes a commission percentage scheme for sales made within and without Hawes' territory to be ambiguous.[4] The language could be interpreted to support either of the parties' contentions. However, neither party has submitted extrinsic evidence which demonstrates the absence of genuine issue as to the intended meaning of the provisions. Therefore, summary judgment is inappropriate on either motion. See *Schwabenbauer v. Board of Education, supra.*

Pursuant to F.R.Civ.P. 56(d), the Court hereby specifies that the parties' mutual assent to renewal of the 1979 Agreement for a second twelve month term commencing January 25, 1980, with a re-negotiated sales quota of $600,000, appears to be without substantial controversy. Plaintiff's motion is granted to the extent of concluding that the 1979 Agreement was in fact accordingly renewed. Defendant's motion is granted to the extent of dismissing the complaint insofar as it alleges plaintiff's right to punitive damages. The residual aspects of each motion are denied. Trial of the action on the remaining disputed issues, *viz.,* breach, damages, further interpretation of the contract, and violation of the antitrust laws, will commence in Courtroom No. 2 on May 17, 1982 at 10:00 A.M. The parties are hereby directed to submit a joint proposed pretrial order by May 3, 1982, and to appear at a final pretrial conference on May 10, 1982 at 4:00 P.M.

SO ORDERED.

---

4. The addendum provision reads in full:

"5. Agent will be compensated at the following rates for the sale or installation of equipment in different territories.

—Sale or rental of equipment by Agent to account within territory for installation in another territory: Commission Rate 50% to 33½% *of Agent's normal commission rate* depending on contribution of Sales Representatives in territory of installation.

—Sale or rental of equipment by Wang Sales Representative to account within territory covered by Agent: Commission Rate 50% to 66⅔% *of Agent's normal commission rate* depending on contribution of Agent to sales effort."

Pl.Exh.A (emphasis added to indicate handwritten insertions).