NEW YORK TELEPHONE COMPANY, Appellant, *v.* JAMESTOWN TELEPHONE CORPORATION, Respondent.

Argued January 23, 1940; decided March 12, 1940.

*Lyman M. Bass* and *Thomas R. Wheeler* for appellant. Respondent, by continuing to use the toll facilities of appellant on and after March 1, 1932, nullified its notice of termination of the traffic agreement. (*Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Cammack* v. *Slattery & Bros., Inc.*, 241 N. Y. 39; *Brennan* v. *National Equitable Ins. Co.*, 247 N. Y. 486; *St. Regis Paper Co.* v. *St. Clara Lumber Co.*, 186 N. Y. 89; *Milwaukee Boston Store* v. *Katz*, 153 Wis. 492.) The question of the renewal of a contract which expires at a definite date is fundamentally different from the question whether a notice given to terminate a contract continuing indefinitely has been waived or nullified by the conduct of the party giving the notice. (*Schuyler* v. *Smith*, 51 N. Y. 309; *Foster* v. *White*, 279 N. Y. 38; *Cammack* v. *Slattery*, 241 N. Y. 39.) A telephone corporation which has established toll connections with another such corporation

by contract is not prohibited by common law rule from discontinuing such connection when the contract providing therefor also provides for discontinuance. (*Oklahoma-Arkansas Tel. Co.* v. *Southwestern Bell Tel. Co.*, 45 Fed. Rep. [2d] 995; *Allen* v. *Railroad Com.*, 231 N. W. Rep. 184; *State* v. *Cadwallader*, 172 Ind. 619.) The jurisdiction of the Public Service Commission over the subjects committed to it by the Legislature, including toll connections and joint rates, is exclusive, and was intended to supersede all common law remedies. (*Purcell* v. *New York C. R. R. Co.*, 268 N. Y. 164; *Murray* v. *New York Tel. Co.*, 170 App. Div. 17; 226 N. Y. 590; *People ex rel. City of New York* v. *Nixon*, 229 N. Y. 356; *Matter of Dry Dock, E. B. & B. R. R. Co.*, 254 N. Y. 305; *Gurney Heater Mfg. Co.* v. *N. Y., N. H. & H. R. R. Co.*, 264 Mass. 427; *St. Paul Book & Stationery Co.* v. *St. Paul Gas Light Co.*, 130 Minn. 71.)

*John Lord O'Brian* and *Philip Halpern* for respondent. The notice of termination of the contract was not withdrawn or nullified by the continuance of the long distance telephone service after March 1, 1932. (*Miller* v. *Levi*, 44 N. Y. 489; *Burnee Corp.* v. *Uneeda Pure Orange Drink Co.*, 132 Misc. Rep. 435; *Harlem Gas Co.* v. *Mayor*, 33 N. Y. 309; *Northern Westchester Lighting Co.* v. *Village of Ossining*, 179 App. Div. 135; 227 N. Y. 579; *Queens County Water Co.* v. *City of New York*, 186 App. Div. 512; *Clover Condensed Milk Co.* v. *Cushman Brothers Co.*, 31 App. Div. 108.) It was properly held as a matter of law that plaintiff was not entitled to recover upon the canceled contract. (*Port Jervis Water Works Co.* v. *Village of Port Jervis*, 151 N. Y. 111; *People ex rel. City of New York* v. *Queens County Water Co.*, 232 N. Y. 277; *Harlem Gas Co.* v. *Mayor*, 33 N. Y. 309; *Northern Westchester Lighting Co.* v. *Ossining*, 179 App. Div. 135; 227 N. Y. 579; *Queens County Water Co.* v. *City of New York*, 186 App. Div. 512; *Hazeltine* v. *Weld*, 73 N. Y. 156; *Chamberlain* v. *Pratt*, 33 N. Y. 47; *Chase* v. *Second Ave. Realty Co.*, 97 N. Y. 384; *Phipps Estate* v. *Phong*, 214 N. Y. 308; *Smith* v. *Allt*, 7 Daly, 492.) It was the duty of both parties

to continue to render the long distance telephone service after the date of the termination of the contract. (*Matter of Jamestown Tel. Corp.* 4 F. C. C. Rep. 326; *State* v. *Cadwallader*, 172 Ind. 619; *Clinton-Dunn Telephone Co.* v. *Carolina Tel. & Tel. Co.*, 159 N. C. 9; *Campbellsville Tel. Co.* v. *Lebanon Tel. Co.*, 118 Ky. 277; *United States Tel. Co.* v. *Central Union Tel. Co.*, 171 Fed. Rep. 130; *City of Jamestown* v. *Penna. Gas Co.*, 1 Fed. Rep. [2d] 871; *Ft. Smith Light & Traction Co.* v. *Bourland*, 267 U. S. 330; *Brimstone R. R. & C. Co.* v. *United States*, 276 U. S. 104; *City of New York* v. *N. Y. Tel. Co.*, 115 Misc. Rep. 262; 202 App. Div. 796; 236 N. Y. 615.)

LEHMAN, Ch. J. The defendant, Jamestown Telephone Corporation, is the sole telephone company in the city of Jamestown. Its wires extend only fifteen miles beyond the city. The plaintiff, New York Telephone Company, maintains a telephone system extending to all parts of the State. The defendant corporation was formed to take over the business and property of a corporation, which had been controlled by the New York Telephone Company and had been operated as part of its general telephone system, and the business and property of Home Telephone Company, a local independent telephone company. The New York Telephone Company received part of the stock of the defendant, Jamestown Telephone Corporation. Jamestown Telephone Corporation began to do business on May 1, 1919, and, by instrument dated the same day, the New York Telephone Company and Jamestown Telephone Corporation entered into an agreement fixing the obligations of the parties in connection with " joint traffic " or the exchange of long distance telephone messages. The New York Telephone Company agreed to connect its telephone system with the system of the Jamestown Corporation. The New York Telephone Company, acting in behalf of both companies, filed with the Public Service Commission, in accordance with the Public Service Law (Cons. Laws, ch. 48), section 92, a schedule of tolls for the joint traffic. The local telephone

corporation agreed to furnish switchboard and other service so that messages to points outside of the Jamestown district, but originating in the Jamestown district, and messages to subscribers in Jamestown, but originating outside of the Jamestown district, could be transmitted over the connected wires of both companies. For such services, payment was to be made in accordance with rates fixed by the contract and tolls upon joint messages were to be divided in accordance with a standard or measure defined in the contract. Since the date of that contract, the parties, pursuant to its terms, have exchanged telephone messages and, until March 1, 1932, payments were made in accordance with the terms of the contract, as subsequently modified in particulars not material to any question presented upon this appeal. Since that date, the defendant, Jamestown Telephone Corporation has made no payments to the plaintiff. The plaintiff brought this action to recover amounts which are due from the defendant pursuant to the terms of the contract, if the contract is still in existence and fixes the amounts to which each party would be entitled for services rendered and for its share of the tolls for messages passing over the lines of both parties. The defendant claims that the contract came to an end on March 1, 1932, and that upon the exchange of messages thereafter each party was under an obligation to pay the reasonable value of what it received from the other party, but not the amounts fixed by the contract.

The contract provided that. " unless sooner terminated as herein provided, this agreement shall continue until the first day of May, 1929, and thereafter until the expiration of ninety (90) days after notice of termination given in writing by either party hereto to the other, unless terminated on said date by ninety (90) days' previous notice so given." It is undisputed that Jamestown Telephone Corporation gave notice of termination in writing ninety days before the 1st day of March, 1932. It is also undisputed that after March 1, 1932, the parties continued to render services and to exchange messages in the same manner

as before that date. The plaintiff claims that the defendant, Jamestown Telephone Corporation, may not continue to exchange messages with New York Telephone Company as provided in the contract and reject or terminate the obligation created by the contract to pay the amount fixed by that contract. Obligation to pay for benefits received is not denied by the defendant. The issue between the parties is whether the amount to be paid must be measured in accordance with the terms of the express contract or in accordance with an implied contract to pay the reasonable value of such benefits.

Where, after the expiration of a contract fixing the reciprocal rights and obligations of the parties, they continue to do business together, the conduct of the parties may at times permit, or even constrain, a finding that the parties impliedly agree that their rights and obligations in connection with such business should continue to be measured as provided in the old contract. Even in such case, however, the reciprocal obligations arise from the new implied contract and, unless an intent to make such a new contract is expressed or may be fairly inferred from the conduct of the parties, the obligations of the parties are as matter of law not measured by the terms of the contract which has expired. (*Harlem Gaslight Co.* v. *Mayor*, 33 N. Y. 309.) No distinction, in principle, can be drawn here between a contract which, according to its terms, expires on a date fixed by the parties at the time the contract is made and a contract which expires at a date fixed thereafter by notice given in accordance with the terms of the contract. (*Peoples Trust Co.* v. *Schultz Novelty & Sporting Goods Co.*, 244 N. Y. 14.) Here notice was so given and according to its terms the contract expired on March 1, 1932, unless that notice was withdrawn or rendered ineffective by subsequent acts or words of the parties. The problem presented upon this appeal is whether the notice was in fact withdrawn or rendered ineffective by the subsequent acts of the defendant.

The defendant having given notice that the contract would end on March 1, 1932, did nothing in the interval

which evinced any intention to withdraw the notice or which was in any way inconsistent with such notification. Nothing occurred thereafter which dictates or, indeed, permits an inference that the defendant intended to withdraw its notice. On the contrary, it affirmatively appears from correspondence between the parties that the defendant did not intend to withdraw its notice and always contended that the contract was at an end; and the plaintiff recognized that the contract was terminated, though it did suggest, in a letter sent on February 23, 1932, a week before the termination of the contract, that pending the making of a new traffic agreement " accounts between the two companies shall continue to be adjusted and paid monthly in accordance with the existing basis, subject, however, to subsequent adjustment in accordance with such bases as may be so agreed upon to be in effect on and after March 1, 1932." The rights and obligations of the parties after March 1, 1932, cannot be measured by the terms of the contract which had come to an end on March 1st. Though after the expiration of an express contract, an implied contract containing the same terms may arise from the conduct of the parties, that is not the case here. Instead of implied acceptance of the old obligations, there was here express repudiation of such obligations. So the courts below have held.

Analogy is incomplete between cases where a party to a contract asserts a right to rescind for fraud or breach of contract and a case where a party to a contract asserts a right given by contract to limit its life by notice that the contract will terminate at a time fixed by the notice in accordance with the provisions of the contract. In the first group of cases there can be no rescission where the breach of contract or fraud has been waived by the party who has been wronged; and, as matter of law, right to rescind must be exercised promptly after the injured party learns of the wrong. Acceptance of benefit under the contract with knowledge of the wrong constitutes a waiver of the wrong. Notice of rescission for wrong which has been

waived is, of course, a futile act and even after notice of rescission has been given, the wrong may at times be waived or the rescission may be abandoned and the contract kept alive by act of the parties. Recognition that the contract is still in force may prove such abandonment and constitute a waiver of a previous breach. (Cf. *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22, 32.) In the second group of cases the right to terminate is absolute and there can be no question of waiver of previous wrong and no question of right to retain benefits during the interval between notice of termination and the date when termination becomes effective.

The plaintiff leans heavily on the decision of this court in *Cammack* v. *Slattery & Bro., Inc.* (241 N. Y. 39) as authority for the contention that even where notice of termination is given pursuant to the express terms of a contract, the notice is futile if the party giving the notice thereafter accepts benefits under the contract. In that case, the defendant agreed to pay to the plaintiff royalties upon radiators, manufactured and sold by the defendant, which embodied ideas and conformed to plans of the plaintiff. The contract was terminable at will and it appears that the defendant gave to the plaintiff " notices of a desire and intention to terminate " the contract. Notice of termination was, however, accompanied by acts inconsistent with any intention to terminate, for the defendant continued to manufacture and sell the radiators and the court there said that, " * * * of course, it would be unreasonable and inequitable to hold that the defendant might in form terminate its contract and then continue to manufacture radiators without the payment of any royalties such as it had agreed to pay " (p. 45). The obligation of a contract terminable at will to pay royalties for the right to manufacture an article, according to plans and designs of another person, continues until the contract is effectually terminated, and effective termination does not arise from mere notice of intention without relinquishment of benefits derived from the contract. In such case notice of intention is completely negatived by acts. Notice of intention to terminate a contract is an empty

gesture where it appears that the intention is to terminate only the obligation imposed by the contract and not the right to benefits derived from the contract, for the contract gives no right of partial revocation. So we held in that case, but the rule has no application here for here on the date when the notice became effective according to the terms of the contract, nothing had been said or done which rendered the notice ineffective. Then the contract was at an end.

The plaintiff would not be in any better position even if it were assumed that the notice of termination could be rendered ineffective thereafter by any word or act of the defendant, inconsistent with the notice, or which would, as matter of law, constitute an affirmance of the contract for, in this case, no such word or act of the defendant has been shown. Both plaintiff and defendant are public service corporations and in the performance of their public functions they are subject to command and direction of the Public Service Commission. The so-called traffic agreement of 1919 fixed the right and obligations of the parties in respect to long distance messages over the lines of the parties. If the parties had not entered into such a written agreement, the Public Service Commission would have had power to direct that the lines be connected and that the two corporations give to the public service over the joint lines. Then, the Public Service Commission would also have fixed the service which each must perform and the proportion of the joint tolls which each should receive. (Public Service Law, § 97, subd. 3.) The duty to exchange messages and to give joint service did not arise solely from the contract and would not cease with termination of the contract. The public, too, has an interest in the performance of that duty and from the time that the parties filed a joint schedule for service to the public to be performed jointly, the public duty became fixed and could not be destroyed by mutual agreement without the approval of the Public Service Commission. Neither party attempted to withdraw or modify the schedule of rates filed with the Public Service Commis-

sion and until an application for such relief is made and is *granted* by the Commission, both companies are under a duty to continue to furnish joint service to the public. The termination of the contract had the effect, and was intended to have the effect, only of ending the reciprocal *private* obligations of the parties towards each other in connection with the joint service and the division of receipts therefrom. The defendant has not demanded or received from the plaintiff any service which the plaintiff was not bound to render so long as the joint schedule remained in effect. Continuance of a joint service to the public, which neither party could lawfully discontinue without permission of the Public Service Commission, is not in law or in fact inconsistent with notice of termination of a contract, fixing, as between the parties, rights and obligations in the performance of the joint service.

The judgment should be affirmed, with costs.

LOUGHRAN, FINCH, RIPPEY and CONWAY, JJ., concur; SEARS and LEWIS, JJ., taking no part.

Judgment affirmed.