■ LEO DASKOLOPOULOS, Respondent, v EUROPEAN AMERICAN BANK AND TRUST COMPANY, BANKING CORPORATION, et al., Appellants. — In a negligence action to recover damages, *inter alia,* for the loss of the contents of a safe deposit box, defendants appeal from an order of the Supreme Court, Queens County (Giaccio, J.), dated January 27, 1983, which denied their motion for partial summary judgment.

Order affirmed, with costs.

Plaintiff seeks to recover damages for defendants' alleged negligence in permitting certain unauthorized withdrawals of money from his savings account and of cash and other items from his safe deposit box maintained at one of defendants' branch offices. According to plaintiff, his apartment was burglarized and among the items taken were his savings account passbook and his safe deposit box key. He claims that on the next business day he notified the defendants' bank of his loss and that he was told not to worry, but to come in at his convenience to open a new account. He says that he was never told to remove the contents of the safe deposit box. Approximately 15 days later plaintiff went to the defendants' branch office and discovered that during the three-day period following his having notified the bank of the burglary, someone had made withdrawals totaling $1,300 from his savings account and that

his safe deposit box had been emptied of virtually all of its contents. Among the items which plaintiff claims were removed from his safe deposit box were 30 Krugerrands and some $75,000 in cash. Plaintiff contends that the unauthorized withdrawals were occasioned by defendants' negligent failure to provide the proper and necessary safeguard against such an event.

Following joinder of issue, defendants moved for partial summary judgment dismissing so much of the complaint as sought recovery for the 30 Krugerrands and the approximately $75,000 in cash. In support of the motion, defendants assert that recovery for the loss of these particular items was barred by the terms of the lease for the safe deposit box which provided, *inter alia,* that:

"The undersigned (hereinafter Lessee[s]) hereby leases Safe No. 81 from the European American Bank & Trust Company, 866 UN Plaza office, and acknowledges receipt of two keys in connection therewith *together with a copy of the Bank's Rules and Regulations relating to safes.*

"It is agreed that said safe is leased to the Lessee(s) subject to the Rules and Regulations and as they may thereafter be amended *and for the purpose of keeping securities, jewelry, and valuable papers only, and the Lessee(s) agrees not to use the safe for any other purpose including keeping money therein*" (emphasis added).

Special Term denied the motion, *inter alia,* on the ground that the lease — which was for a period of one year — had expired by its terms prior to the time of the unauthorized withdrawals and that defendants had failed to establish that any new contract between the parties contained the same limitation as the original agreement. We agree. Where, after the expiration of a contract fixing the reciprocal rights and obligations of the parties, they continue to do business together, the conduct of the parties may at times permit, or even constrain, a finding that the parties impliedly agree that their rights and obligations in connection with such business should continue to be measured as provided in the old contract. Even in such case, however, the reciprocal obligations arise from the new implied contract and unless an intent to make a new contract is expressed or may be fairly inferred from the conduct of the parties, the obligations of the parties are, as a matter of law, not measured by the terms of the contract which has expired (*New York Tel. Co. v Jamestown Tel. Corp.,* 282 NY 365; see, also, *McDonald v Perkins & Co.,* 133 Wash 622; 22 NY Jur 2d, Contracts, § 203). The lease between the parties had, by its terms, expired prior to the time of the

events in question and the continuance of the relationship was therefore pursuant to an implied contract. In light of plaintiff's allegations that defendants' manager entered his delicatessen and solicited his business, and that "[t]he bank was fully aware that I intended to place my valuables and other personal items including cash into this deposit box", questions of fact exist as to whether defendants, through their alleged knowing acquiescence in plaintiff's continued use of the safe deposit box for storage of the Krugerrands and cash, waived the inclusion of this limitation on use in the implied contract, and as to whether the new implied contract contained the same exclusions as to the use of the safe deposit box as the original agreement (*New York Tel. Co. v Jamestown Tel. Corp., supra*). Moreover, plaintiff testified at his deposition that he never read the leasing agreement at the time he executed it and that, while a representative of the defendants read it to him, he understood the document to be some type of signature card. We find that plaintiff has set forth sufficient allegations to raise issues of fact as to whether he misunderstood the nature of the lease obligations and whether the defendants were aware of that misunderstanding (see *National Bank v Chu,* 47 NY2d 946).

Accordingly, the motion for partial summary judgment was properly denied. Gibbons, Brown and Lawrence, JJ., concur.

Titone, J. P., dissents and votes to reverse the order appealed from and to grant defendants' motion for partial summary judgment dismissing so much of plaintiff's complaint as seeks damages for the loss of 30 Krugerrands and some $75,000 in cash, with the following memorandum:

In this action to recover, *inter alia,* damages for property allegedly stolen from a safe deposit box, the defendants appeal from an order of the Supreme Court, Queens County, which denied their motion for partial summary judgment. At issue is the enforceability of a provision of defendants' rules and regulations which provide that "[o]nly securities, jewelry and valuable papers can be placed in a safe". Finding no basis to deny enforcement, I would reverse.

On May 29, 1978, plaintiff rented a safe deposit box at one of defendants' Manhattan branches. At that time, he signed a "safe deposit contract", providing for a one-year lease at an "annual rent" of $11. The agreement further provides:

"The undersigned (hereinafter Lessee[s]) hereby leases Safe No. 81 from the European American Bank & Trust Company, 866 UN Plaza office, and acknowledges receipt of two keys in connection therewith, together with a copy of the Bank's Rules and Regulations relating to safes.

"It is agreed that said safe is leased to the Lessee(s) subject to the Rules and Regulations and as they may hereafter be amended and for the purpose of keeping securities, jewelry, and valuable papers only, and the Lessee(s) agrees not to use the safe for any other purpose including keeping money therein".

The rules and regulations referred to in the contract specifically state that "[o]nly securities, jewelry and valuable papers can be placed in a safe".

Insofar as pertinent to this appeal, plaintiff alleges in his complaint that on or about June 10, 1980, someone entered the safe deposit box and removed 30 Krugerrands and some $75,000 in cash. Defendants, seeking to invoke the contractual limitation, made a motion for partial summary judgment. Special Term denied the motion for three reasons: (1) the contract "plainly indicates on its face that its term was only to be for one year", (2) the plaintiff may not have believed that he was signing a contract, and (3) in light of plaintiff's claim that the assistant branch manager knew that he intended to keep Krugerrands and cash in the box, the exclusionary terms may not have become part of the agreement, pursuant to subdivision (3) of section 211 of the Restatement of Contracts 2d. While I am sympathetic to the plaintiff's plight, I find neither these nor any other reasons sufficient to deny defendants the right to enforce the terms of their agreement and, therefore, cast my vote for reversal.

At the outset, I would note that the relationship here is one of bailment (see *Cohen v Manufacturers Safe Deposit Co.*, 297 NY 266, 269; *Sun Yau Ko v Lincoln Sav. Bank,* 99 AD2d 943, affd 62 NY2d 938; *Coons v First Nat. Bank,* 218 App Div 283; 9 Williston, Contracts [3d ed], § 1030, p 877). Since a bailee may enter into such a relationship on its own terms and conditions, as, indeed the Legislature has provided (Banking Law, § 96, subds 3, 6), a "lease provision prohibiting the deposit of money in the box is neither unconscionable" nor unenforceable (*Radelman v Manufacturers Hanover Trust Co.,* 61 Misc 2d 669).

Plaintiff's argument that he is not bound by the limitation because the original contract had expired by its own terms is unpersuasive. Under settled precedents, "[w]hen an agreement expires by its own terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old" (*Martin v Campanaro,* 156 F2d 127, 129, cert den 329 US 759; accord *New York Tel. Co. v Jamestown Tel. Corp.,* 282 NY 365; *Miller v Schloss,* 218 NY 400). Plaintiff's action in retaining the box clearly constituted such an assent

and his unilateral act in storing prohibited items is totally irrelevant on the issue.

Moreover, if, as plaintiff argues on this appeal, there is no contract governing the period in question, this, too, would be fatal. As noted in *Coons v First Nat. Bank* (218 App Div 283, 283-284, *supra* [emphasis supplied]), also involving an action to recover for items stolen from a safe deposit box, "[t]he relation between a bailor and a bailee is fixed by contract, either express or implied, and the rights and liabilities of the parties must be determined from the terms of the contract, if express, or, if implied, under the general principles of law and the surroundings and attending circumstances; but always liability is grounded in contract; *one cannot be made the bailee of another's property without his consent*" (see, also, 9 Williston, Contracts [3d ed], § 1030, p 877).

Equally meritless is plaintiff's argument that he did not read the terms and conditions of the agreement. It is ancient law that a party is bound by his signature to a contract, whether he has read it or not (*Pimpinello v Swift & Co.*, 253 NY 159, 162-163; *Wallach Agency v Bank of New York*, 75 AD2d 878, 879).

Finally, I perceive no triable issue of fact with respect to the application of subdivision (3) of section 211 of the Restatement of Contracts 2d. Section 211, which refers to standardized agreements, reads as follows:

"§ 211. Standardized Agreements

"(1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing.

"(2) Such a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.

"(3) Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement."

Comment *f* to section 211 is particularly instructive: "*f. Terms excluded.* Subsection (3) applies to standardized agreements the general principles stated in §§ 20 and 201. Although customers typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in

detail, they are not bound to unknown terms which are beyond the range of reasonable expectation". (Sections 20 and 201 of the Restatement of Contracts 2d govern the effects of misunderstanding and the meaning of particular terms of a contract, respectively.)

Thus if the safe deposit contract had contained language which the plaintiff might not have reasonably expected to find in it, or language used in a technical sense apart from its ordinarily accepted meaning, he might then not be bound by it. That is, however, not the case. Other banks have similar language in their safe deposit contracts which likewise prohibits the use of the boxes for storing money. The limitation is reasonable and commonplace in safe deposit box contracts, and plaintiff should be bound by it (*Radelman v Manufacturers Hanover Trust Co.*, 61 Misc 2d 669, *supra*). In accordance with the case of *Sun Yau Ko v Lincoln Sav. Bank* (99 AD2d 943, affd 62 NY2d 938, *supra*), partial summary judgment should have been granted to the defendants.