ALBERT B. STEMPEL, Respondent, v NORMAN ROSEN, Also Known as NORMAN ROSS, Appellant

The plaintiff Albert B. Stempel is the son-in-law of the defendant Norman Rosen. In March 1975, by oral agreement, the parties became equal partners in three printing brokerage businesses which operated under the names of Ross Printing and Mailing, Beekon Offset and Brown Bros. (hereinafter the businesses). On July 30, 1977, without the benefit of counsel, the parties entered into a written agreement which was prepared by the plaintiff. While this agreement primarily dealt with the distribution of partnership assets in the event of the death of a partner, it reiterated that the businesses were owned equally by Stempel and Rosen; it stated that the "[d]rawing of weekly salary would continue at the same rate of $400.00 per week to each partner unless it is mutually

increased or decreased"; it acknowledged the equal ownership of a Keogh savings account; it stated the names of the persons who could sign checks for all bank accounts for the three companies; it referred to moneys loaned by the businesses and money owed by the businesses to any individual; and it provided for monthly accounts receivable and payable figures to be provided to each partner at the end of each month.

On July 17, 1979, the written agreement dated July 30, 1977, was terminated by a writing signed by each of the parties. The plaintiff testified as to the effect of this written termination on the original oral partnership agreement and the written agreement dated July 30, 1977, as follows:

"Q You testified previously that prior to July 1977 you had an oral partnership understanding with your father-in-law, isn't that so?

"A That's so.

"Q What happened to that prior oral partnership agreement when you signed this agreement of July 30, 1977?

"A It was encompassed within this 1977 agreement.

"Q And it is your understanding that the July 30, 1977 agreement applies to all of the businesses that are involved with your father-in-law, isn't that so?

"A It says here all three companies.

"Q So that's correct?

"A Yes.

"Q But that agreement by your own testimony was terminated, wasn't it, Mr. Stempel?

"A I would have to answer you this way. It was terminated but it doesn't say that Norman Ross [the defendant Rosen] even owns these three businesses".

Following the execution of the termination agreement, the plaintiff moved to Florida.

The plaintiff further testified that in February 1979 prior to his relocation to Florida and prior to the execution of the termination agreement, he entered into another oral agreement with the defendant, by the terms of which the defendant agreed to pay the plaintiff "$400 a week for as long as you [the defendant Rosen] run Ross Printing & Mailing or until you retire or until I die". In crucial testimony, on cross-examination, the plaintiff conceded that by the terms of this oral agreement he agreed to sell his partnership interest in the businesses in return for the $400 weekly payments, as follows:

"Q So essentially, Mr. Stempel, are you alleging that Mr. Rosen had agreed to pay you for your share of the business $400—what was this payment for?

"A That was to pay me for my part of the business at the rate of $400 a week, and there was a breach of contract here. He never lived up to that here. He only paid it to March.

"Q Please answer the question directly. You are alleging that this $400 per week pursuant to the oral agreement of February 1979, you are alleging that that agreement was to pay you for your half of the partnership, isn't that so?

"A That is correct.

"Q So, Mr. Stempel, you are not alleging here today that you are still a partner in the business; you are alleging that Mr. Rosen breached his contract to pay you $400 a week for your share in the business, isn't that correct?

"A Just a minute. Can I have that document for one second?

"THE COURT: Answer his question.

"THE WITNESS: Say that again.

"[Question read by the court reporter.]

"A That is correct."

Although later in his testimony the plaintiff said that "I feel right now that I am a partner in the business", he never refuted his prior testimony that he sold his partnership interest for the $400 weekly payment. In fact, the plaintiff testified that the reason he "felt he was a partner" was because the defendant stopped paying the $400 per week in March of 1980. His testimony was as follows:

"Q But, Mr. Stempel, you just testified that you are not a partner anymore.

"A I said if he had continued to pay the $400 a week, the business would have belonged to him. He stopped paying in March of 1980".

The Supreme Court found that the parties entered into an oral partnership agreement in 1975. The court further found that the July 30, 1977, agreement did not encompass all the terms of this partnership relationship, so that the July 17, 1979, written termination agreement did not terminate the partnership. The court, therefore, found that the plaintiff was still a partner in the businesses and was entitled to an accounting. We disagree.

On an appeal from a judgment entered after a nonjury trial, our scope of review is as broad as that of the Trial Judge

*(Majauskas v Majauskas,* 61 NY2d 481, 493-494; *Northern Westchester Professional Park Assocs. v Town of Bedford,* 60 NY2d 492, 499; *Broida v Bancroft,* 103 AD2d 88; 7 Weinstein-Korn-Miller, NY Civ Prac ¶ 5501.22). While findings by a court without a jury are not lightly set aside, in a nonjury case this court's inquiry is not limited to whether the findings were supported by some credible evidence if a different finding is not unreasonable *(D'Arienzo v Manderville,* 106 AD2d 686). In this case the finding that the plaintiff is still a partner is not supported by the weight of the credible evidence.

The plaintiff expressly conceded that in February 1979 he sold his partnership interest in the businesses to the defendant in return for payments by his father-in-law of $400 per week until the plaintiff's death or the defendant's retirement from the businesses. Further, following that oral agreement, the parties signed a written document on July 17, 1979, terminating, by mutual consent, their prior July 30, 1977, written partnership agreement. Also, in furtherance of the February 1979 oral agreement, the defendant paid the plaintiff $400 per week from July 1979 to March 1980 and the sum of $810 per month from the summer of 1984 until the end of 1985 together with one half of the Keogh account in the sum of $11,000.

Given the factual posture that these lay parties negotiated and consummated their own agreement without benefit of counsel on July 30, 1977; that the agreement was prepared by the plaintiff; that the businesses involved were printing brokerage firms which did not maintain inventory, vehicles or equipment, except for one typewriter, thereby simplifying the scope of any partnership agreement; and that the parties were son-in-law and father-in-law, we find that the July 30, 1977, agreement was intended to be their partnership-agreement-in-chief which was terminated in writing on July 17, 1979.

In sum, we find that in February 1979 the plaintiff sold his partnership interest to the defendant for the sum of $400 per week payable until the defendant retires or until the plaintiff dies. In this regard, the plaintiff's contention that there was a rescission of the February 1979 oral agreement as a result of the defendant's breach, is without merit. The right to rescind a contract was barred by subsequent acceptance of the benefits growing out of the contract *(New York Tel. Co. v Jamestown Tel. Corp.,* 282 NY 365; 22 NY Jur 2d, Contracts, § 418). Since the plaintiff conveyed his partnership interest, he is no longer a partner in the businesses and is, therefore, not entitled to an accounting. However, he has adduced evidence of a breach

of the February 1979 oral agreement and damages flowing therefrom. Therefore, the complaint is amended to conform to the proof, and a new trial is granted on the breach of contract cause of action. Bracken, J. P., Kunzeman, Spatt and Harwood, JJ., concur.