LOCAL UNION 813, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
Plaintiff,

v.

WASTE MANAGEMENT OF NEW
YORK, LLC, Defendant.

No. CV–06–5423 (BMC)(RML).

United States District Court,
E.D. New York.

Jan. 10, 2007.

O'Donnel, Schwartz, Glanstein & Rosen, L.L.P. by David M. Glanstein, Rockville Center, NY, for Plaintiff.

Reed Smith LLP by Paul P. Rooney and Michael David Jones, New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER

COGAN, District Judge.

This is an action to compel arbitration of grievances that arose from the employer's decision to terminate eight employees for conduct that occurred after the expiration of the parties' collective bargaining agreement, and before the execution of a successor agreement. The Union contends that the arbitration and termination-for-cause provisions of the contract survived expiration, and thus arbitration should be compelled, while the employer contends that they did not survive and thus there is no provision requiring arbitration. The matter is before me on the parties' cross-motions for summary judgment. I hold that the arbitration clause does not apply to the dispute at issue here. Accordingly, I grant the employer's motion for summary judgment and deny the Union's motion.

## BACKGROUND

Waste Management of New York and Local 813 of the IBT were parties to a collective bargaining agreement that, with extensions, expired on December 3, 2005 (the "2002 CBA"). The 2002 CBA contained a broad dispute resolution procedure that applied to any dispute between Waste Management and its employees or Local 813. This procedure consisted of a two-step internal grievance process followed by arbitration if the internal process failed. The 2002 CBA also restricted Waste Management's ability to terminate employees, prohibiting termination "without just cause," and requiring 72 hours notice to Local 813 prior to termination.

On or about December 19, 2005, the parties were at an impasse, unable to agree on terms for a new agreement. Waste Management therefore unilaterally implemented the terms of its "Best and Final Offer" ("BFO"). The BFO essentially consisted of a list of changes to the 2002 CBA. For example, Waste Management continued to pay into Local 813's pension and severance benefit funds, as it had under the expired agreement, but ceased payments into its medical insurance benefit fund. The BFO did not contain any reference to any change in the "just cause" or arbitration provisions.

By memo to all Local 813 Employees dated December 29, 2005, Waste Management advised them of various terms and conditions that would be applied to their employment under the BFO as a result of the expiration of the 2002 CBA, including the need to elect medical coverage under Waste Management's plans as opposed to Local 813's plan. Under a heading entitled "Grievances," Waste Management advised its employees that "[t]he Company will continue to address grievances which may be filed. Because the contract has expired, however, the Company has no obligation to arbitrate unresolved grievances."[1]

The parties continued in negotiations and mediation over the next four months

---

1. At the Court's suggestion, since the facts are largely undisputed, the parties filed a joint statement of undisputed facts under Local Rule 56.1. This comprehensive statement included two short sections containing a few "extra" facts offered by each side, respectively. There is a minor dispute about some of these extra facts but they are not material.

without success. On April 3, 2006, Local 813 went on strike at Waste Management's New York City operation, and Waste Management hired replacement workers and ceased paying into the benefit funds except for new hires. The strike lasted nearly four months, until July 26, 2006, when, after further negotiations and mediation, the parties executed two Memorandum Agreements ("MOAs") that set forth the terms for a successor agreement. Like the BFO, the MOAs consisted of a list of modifications to the 2002 CBA, and did not reference the just cause or arbitration provisions from that expired agreement. The MOAs provided for a term of July 31, 2006 to February 28, 2009 for the successor agreement.

Beginning on July 25, 2006, and continuing through July 28, 2006, Waste Management delivered written notices to eight employees and Local 813 giving them 72 hours notice of its intent to terminate their employment for allegedly committing violent or destructive acts or speech during the strike. Local 813 protested the terminations and demanded reinstatement on July 31, 2006. On August 3, 2006, Local 813 served a demand for arbitration, challenging the termination of one of the eight employees, but Waste Management declined to participate, asserting that the misconduct leading to the terminations, and the terminations themselves, occurred after the expiration of the 2002 CBA and before execution of a successor agreement, so there was no arbitration clause in effect that covered the dispute.

On August 31, 2006, the parties executed a new collective bargaining agreement. The new CBA adopted substantially the same language concerning termination-for-cause and arbitration that had been in the 2002 CBA, but did not address the retroactivity of those provisions nor refer to the corresponding provisions in the 2002 CBA.

Based upon Waste Management's continuing refusal to arbitrate the termination of the eight employees, Local 813 commenced this action.

## DISCUSSION

### I. Applicable Case Law

In *Litton Financial Printing Div. v. NLRB*, 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991), the collective bargaining agreement between Litton and the union provided that "in case of layoffs, lengths of continuous service will be the determining factor if other things such as aptitude and ability are equal." Well after the expiration of the agreement, Litton decided to eliminate one facet of its operations and laid off 10 employees, and the union demanded arbitration, alleging violation of the seniority clause quoted above. The Supreme Court held that because the layoffs occurred after the expiration of the collective bargaining agreement, Litton had no obligation to arbitrate.

The starting point for the Court's analysis was the *Katz* doctrine, from *NLRB v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), which brands as an unfair labor practice an employer's unilateral alteration, prior to impasse, of certain terms and conditions of employment while collective bargaining is underway. The Court noted that the *Katz* doctrine applies to unilateral changes where a collective bargaining agreement has expired and the parties are still negotiating a new agreement. *See Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 544 n. 6, 108 S.Ct. 830, 833 n. 6, 98 L.Ed.2d 936 (1988).

The Court contrasted the *Katz* doctrine with the mandatory bargaining rule, which brands as an unfair labor practice the refusal to bargain over particular terms. The mandatory bargaining rule is broader

than the *Katz* doctrine; the Court observed that upon expiration of a collective bargaining agreement and upon reaching impasse, an employer may unilaterally abrogate certain terms (*e.g.,* dues check-off or union security) that nevertheless remain subject to mandatory bargaining. The Litton Court adopted the NLRB's position that an arbitration clause in an expired agreement is a term that is subject to mandatory bargaining—that is, the parties must bargain over whether the successor agreement will include an arbitration clause—but is not subject to automatic survival under *Katz:*

> The rule [excluding arbitration clauses from *Katz* ] is grounded in the strong statutory principle, found in both the language of the NLRA and its drafting history, of consensual rather than compulsory arbitration. The rule conforms with our statement that no obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so. We reaffirm today that under the NLRA arbitration is a matter of consent, and that it will not be imposed upon parties beyond the scope of their agreement.

*Litton,* 501 U.S. at 200–01, 111 S.Ct. at 2222.

Having concluded that arbitration clauses do not automatically survive expiration of collective bargaining agreements under *Katz,* the Court went on to consider other possible grounds for post-expiration application of such clauses. The Court discussed its earlier decision in *Nolde Brothers, Inc. v. Bakery Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), in which it compelled arbitration of a post-expiration termination where the terminated employees had claimed the right to a severance payment under the expired agreement.

The difference between *Litton* and *Nolde Brothers,* the Court held, was that the rights at issue in *Nolde Brothers* were "in the nature of 'accrued' or 'vested' rights," *id.* at 248, 97 S.Ct. at 1070, that had already become fixed at the point of contract expiration. According to the Court, the right to a severance payment, although stemming from post-expiration termination, "clearly arises *under* the contract." *Id.* at 249, 97 S.Ct. at 1071 (emphasis in original). In *Litton,* the Court held that the *Nolde Brothers* presumption in favor of post-expiration arbitration "is limited to disputes arising under the contract." 501 U.S. at 205, 111 S.Ct. at 2224–25.

The *Litton* Court in turn defined "arising under the contract" as limited to three instances: (a) where the grievance involves facts or occurrences that arose before expiration; (b) where a post-expiration action infringes a right that vested or accrued under the agreement; or (c) where, under "normal principles of contract interpretation," the disputed contractual right survives expiration of the remainder of the agreement. *Id.* at 206, 111 S.Ct. at 2225. The Court therefore excluded from arbitration post-expiration claims of rights derived not from normal contract principles, but from *Katz:* "Although after expiration most terms and conditions of employment are not subject to unilateral change, in order to protect the statutory right to bargain [under *Katz* ], those terms and conditions no longer have force by virtue of the contract." *Id.*

On the facts before it, the Litton Court held that the layoff grievances were not arbitrable because they did not arise under the contract. Without determining whether the "seniority" requirement of the layoff clause created a vested right analogous to

the severance benefits under *Nolde Brothers*, the Court noted that seniority was not the only factor under the clause—it also required consideration of "aptitude and ability." These factors "change over time" and thus could not be said to "vest or accrue or be understood as a form of deferred compensation." *Id.* at 210, 111 S.Ct. at 2227.

## II. *Application*

■ Local 813 acknowledges that of the three instances in which *Litton* allows for post-expiration arbitration, the only one potentially applicable here is the third: where, under "normal principles of contract interpretation," the disputed contractual right survives expiration of the remainder of the agreement. It does not contend that its members had any "vested right" to be terminated only for just cause based on conduct that occurred after expiration of the 2002 CBA or to arbitrate such claims. Rather, it contends that the conduct of the parties and the terms of the BFO, MOAs, and successor agreement created an obligation to arbitrate post-expiration termination disputes under "normal principles of contract interpretation." *See Litton*, 501 U.S. at 200–01, 111 S.Ct. at 2222.

Because Local 813 is not relying on the "vested rights" doctrine for its position, its reliance on the presumption in favor of arbitrability is misplaced. *Litton* makes clear that before the *Nolde Brothers* presumption of arbitrability can be applied, the Court must first determine that the dispute "arises under" the contract. "Vested rights" granted only by the contract, of course, always arise under the contract, and thus the presumption of arbitrability will always apply in vested rights cases. *See CPR (USA) Inc. v. Spray*, 187 F.3d 245 (2d Cir.1999) (where post-expiration dispute over amount owed from bonus pool arose under employment agreement, presumption of arbitrability applied). But in a "normal principles of contract interpretation" case, the presumption of arbitrability, as a practical matter, is immaterial. This is because if "normal principles" demonstrate that the parties intended to arbitrate the issue, it will be arbitrated, whereas if "normal principles" demonstrate a lack of such intention, then the presumption never enters the analysis.

Local 813 points principally to the following facts in support of its argument that, under normal principles of contract interpretation, the just cause and arbitration provisions survived the expiration of the 2002 CBA: (1) in the BFO that Waste Management unilaterally implemented, Waste Management expressly repudiated or modified some of the terms of the 2002 CBA, but did not expressly repudiate the just cause or arbitration provisions; (2) in terminating the eight employees, Waste Management gave 72 hours notice as provided in the 2002 CBA, thus indicating the continuing applicability of that just cause provision; (3) in the MOAs' lists of changes to the 2002 CBA, Waste Management did not mention just cause or arbitration, thus continuing those clauses unchanged; and (4) Waste Management did not materially change the just cause and arbitration provisions in the new CBA from the terms as they had been set forth in the 2002 CBA.

■ It is true that under general principles of contract law, the terms of an agreement may be applied to the parties' post-expiration relationship. As the New York Court of Appeals has held:

> Where, as here, after the expiration of a contract fixing the reciprocal rights and obligations of the parties, they continue to do business together, the conduct of the parties may at times permit, or even constrain, a finding that the parties im-

pliedly agree that their rights and obligations in connection with such business should continue to be measured as provided in the old contract.

*New York Tel. Co. v. Jamestown Tel. Corp.*, 282 N.Y. 365, 371, 26 N.E.2d 295, 297 (1940). It is therefore at least arguable, as Local 813 asserts, that when Waste Management made some modifications to the 2002 CBA and continued to employ Local 813 members without changing the just cause and arbitration provisions, Waste Management manifested an intent, and became bound, to a continuation of the just cause and arbitration provisions in the 2002 CBA.

Waste Management contends that *Litton* requires express language indicating the continuation of terms from the expired contracts. That reading of *Litton* is overbroad. True, the Court in *Litton* stated that, "if a collective bargaining agreement provides in explicit terms that certain benefits continue after the agreement's expiration," 501 U.S. at 207, 111 S.Ct. at 2226, then post-expiration disputes over those benefits would be covered by an arbitration clause; however, the Court's reference to "explicit terms" was simply the paradigmatic example of when an arbitration clause would most clearly apply. The analytical framework articulated by the Court remains grounded in "normal principles of contract interpretation." *Id.* at 206, 111 S.Ct. at 2225. Because the Court noted that a "duty may arise as well from the express *or implied* terms of the expired agreement itself," *id.* at 203, 111 S.Ct. at 2224 (emphasis added), it follows that other principles of contract interpretation, including the common law principle that parties, by their conduct, may extend the terms of a contract, are also applicable to determine whether contract terms apply post-expiration.

Nevertheless, the difficulty with Local 813's argument, at least as applied to the BFO, is that "normal principles of contract interpretation" require an acceptance by the offeree before the offeror can be considered bound. The test remains whether there was a meeting of the minds, as is always the case in determining the existence of any contract. Here, there is no dispute that Local 813 did not consider itself bound by the BFO. Waste Management implemented the BFO unilaterally precisely because Local 813 refused to accept it.

The fact that Local 813 sanctioned a strike four months after Waste Management implemented the BFO demonstrates conclusively that Local 813 did not consider itself bound to the BFO's terms. Just as the BFO proposed no changes to the just cause or arbitration provisions of the 2002 CBA, it proposed no changes to the "no strike" provision. Local 813 clearly recognized that it was not bound by the "no strike" clause of the expired agreement when it went on strike, notwithstanding the BFO that would have adopted that term. For its part, Waste Management manifested its position that the BFO was conditional by unilaterally advising the employees on December 29, 2005 that it would not arbitrate any grievances, notwithstanding the arbitration clause in the expired agreement.

The Second Circuit's decision in *Martin v. Campanaro*, 156 F.2d 127 (2d Cir.1946), is the converse of this case, and illustrates the principle of and need for mutuality. There, upon expiration of the last in a series of collective bargaining agreements, union members continued to work and be paid the wages set forth in the expired agreement while negotiations towards a new agreement continued. At impasse, the matter went to arbitration and an award was rendered in favor of the union.

While the employer's objections to the award were pending, creditors filed an involuntary bankruptcy petition against the employer. The workers filed claims in the bankruptcy case, based on the arbitration award or, alternatively, *quantum meruit*, but the bankruptcy trustee contended that the employees, by accepting the old wages, had indicated their intent to continue the wage terms in the expired agreement. Writing for the Circuit, Judge Frank recognized that, "[w]hen an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old." *Id.* at 129. The Court went on to hold, however, that the union's consistent pursuit of increased compensation through arbitration showed that the union did not intend to continue the expired payment terms of the old agreement, and the workers could therefore pursue their *quantum meruit* claims. *See also New York Tel.*, 26 N.E.2d at 295 (even when parties continue to perform post-expiration, "unless an intent to make such a new contract is expressed or may be fairly inferred from the conduct of the parties, the obligations of the parties are as a matter of law not measured by the terms of the contract which has expired.").

It thus cannot be the case that Waste Management was bound to the terms of the BFO while Local 813 was not. "Normal principles of contract interpretation" encompass the fundamental concepts of meeting of the minds, offer and acceptance, and mutuality of agreement. To hold Waste Management but not Local 813 to the terms of the BFO would allow Local 813 to take the benefits of the BFO while rejecting its burdens. At most, the BFO shows that Waste Management was willing to continue the just cause and arbitration provisions of the 2002 CBA—but only on the condition that Local 813 accept the complete package of terms in the offer. The same is true of Waste Management's delivery of 72 hours notice of termination, as the expired agreement would have required—Waste Management was demonstrating its willingness to live with that term, but only if Local 813 was willing to accept the other terms in the BFO. That condition was never satisfied, and thus normal principles of contract interpretation compel the conclusion that implementation of the BFO did not serve to continue the just cause or arbitration provisions of the expired collective bargaining agreement.

■ The MOAs, in contrast, present a different and closer question for several reasons. First, since both parties signed them, the lack of mutuality inherent in the unilateral implementation of the BFO is not an issue. Second, the MOAs refer to a "renewal" of the 2002 CBA, except for the express changes contained in the MOAs, which implies a continuation without interruption of the expired agreement. Third, the timing of the MOAs was virtually concurrent with, or even before, the termination of the employees in question—one employee was fired on July 25, 2006, the day before the MOAs were signed, and the rest were fired on or after July 26, 2006, the date on which the parties executed the MOAs.

■ Notwithstanding these facts, I believe that normal principles of contract interpretation compel the conclusion that the MOAs did not become binding and thus could not create a requirement of just cause for terminations, nor an obligation to arbitrate disputes over such terminations, as of the MOAs' execution. The MOAs were the legal equivalent of letters of intent or term sheets. The law generally enforces such instruments as contracts when they contain all material terms of the

contemplated contract, or when the remaining acts to arrive at a contract, *e.g.*, drafting and execution of formal contract documents, are merely ministerial. *See V'Soske v. Barwick*, 404 F.2d 495, 499 (2d Cir.1968) ("if the parties intend not to be bound until they have executed a formal document embodying their agreement, they will not be bound until then … [but] the mere fact that the parties contemplate memorializing their agreement in a formal document does not prevent their informal agreement from taking effect prior to that event."). The MOAs, incorporating by reference the terms of the 2002 CBA, and providing only for the ministerial act of drafting a perfunctory "return to work" agreement, meet this standard.

█ However, there is an important exception to this rule. When the parties include a term in their letter of intent or term sheet that shows the intent not to be bound prior to the implementation of what otherwise would be a ministerial step, then the instrument is not binding. Thus, for example, a term sheet or letter of intent that provides that the parties "will proceed to draft a formal agreement implementing these terms" is a binding contract, for the formality is presumed to be a ministerial act; on the other hand, one that provides, "this agreement is not binding until the parties execute formal documentation" is not binding, even if the terms of the two instruments would be otherwise identical. *See Prospect Street Ventures I, LLC v. Eclipsys Solutions Corp.*, 23 A.D.3d 213, 804 N.Y.S.2d 301 (1st Dep't 2005) (where otherwise complete letter agreement provided that it was subject to "execution of a definitive agreement satisfactory in form and substance to both sides," it was not binding). This distinction simply recognizes the fundamental contract principle that, subject to limited statutory or public policy exceptions, contracting parties re-

tain the freedom to precisely define their rights and obligations in any way they wish.

In the instant case, the MOAs contained all of the material terms to make them binding. Nevertheless, if the parties may expressly postpone the binding effect of their agreement pending formal documentation, notwithstanding the completeness of their informal agreement, then they may also expressly limit the effective term of their informal agreement. Both of these scenarios recognize the basic principle of contract law that the parties are the masters of their contractual agreement, and that the courts will apply their agreement, whether formal or informal, according to their expressed and demonstrated intent.

In the MOAs, the parties deliberately and expressly chose to post-date the effective date of the MOAs to July 31, 2006: "The term of this agreement shall be from July 31, 2006 through February 28, 2009." The parties could have made the agreement immediately effective, in which case it would have governed all but one of the eight terminations and eliminated any uncertainty about disciplinary steps that Waste Management might take for those involved in the strike. Likewise, they could have addressed the consequences of the strike in the MOAs in a myriad of other ways, including revisiting the effective date when they executed the successor agreement on August 31, 2006, but they took none of these steps.

With the parties having deliberately chosen an effective date of July 31, 2006, I do not see how I can implement an earlier date by judicial decree. To do so would violate the "normal principles of contract interpretation" that the Supreme Court has defined as guiding determination of issues like this one. Accordingly, I hold that there was no agreement to terminate

only for just cause or to arbitrate the eight terminations that occurred between July 25 and July 28, 2006.

## CONCLUSION

Waste Management's motion for summary judgment is granted, Local 813's motion for summary judgment is denied, and the complaint is dismissed.

**SO ORDERED.**