■ RED APPLE CHILD DEVELOPMENT CENTER, Respondent, v COMMUNITY SCHOOL DISTRICTS Two et al., Appellants. [756 NYS2d 527] —Order, Supreme Court, New York County (Jane Solomon, J.), entered July 10, 2002, granting respondents' motion to renew and reargue which, to the extent appealed from as limited by the brief, adhered to the original determination granting the petition to the extent of vacating the determination of respondent Board of Education terminating petitioner's contracts, unanimously reversed, on the law, without costs or disbursements, and the petition denied and dismissed. Appeal from order and judgment (one paper), same court and Justice, entered on or about February 8, 2002, unanimously dismissed, without costs or disbursements, as superseded by the appeal from the aforesaid order.

Petitioner, an educational corporation chartered by the Board of Regents as a private educational institution, operated day care and prekindergarten facilities, licensed by the New York City Department of Health (DOH) and catering to children in immigrant Chinese communities at multiple sites in Manhattan, Queens and Brooklyn. More than 300 children attended these facilities for which petitioner was paid a certain sum for each child pursuant to the universal prekindergarten program of Education Law § 3602-e. These services were provided in seven Community School Districts (CSDs) pursuant to seven contracts between petitioner and respondent Board of Education, signed in 1998 and extended through June 2004. According to the original contracts, submitted on renewal but not on the original motion, although referred to, petitioner was required to maintain a valid certificate of occupancy (C of O), DOH licenses and certificates of insurance for each location. Petitioner was also required to provide the CSDs with proof of newly issued certificates or licenses; failure to do so would result in suspension of all payments under the contract. The agreements contained a termination clause that provided that the agreement and "any renewal or extension may be terminated by the chancellor at any time upon thirty (30) days written notice.* * * Upon the expiration of the 30 day period the CSD obligations shall cease."

In June 2001, the DOH learned that petitioner's Chief Executive Officer had been arrested for allegedly attempting to bribe an undercover DOH inspector to overlook a false C of O he had proffered for one of the sites located in Brooklyn. DOH

requested of the Department of Buildings certified copies of C of Os for all of petitioner's sites and compared them to the C of Os submitted by petitioner to qualify for DOH day care permits. DOH then determined that six of the seven day care center C of Os had been altered to remove the "temporary" designation and, in some cases, to remove various conditions or restrictions included as riders on the documents. Various permit applications also included contradictory or inconsistent information on the ownership and incorporation of the various centers. The DOH issued an order, dated July 13, 2001, suspending all of petitioner's permits to operate day care sites and directing it to close its seven centers. On the basis of this suspension and the closing of its centers, respondent Board, by letter dated July 17, 2001, terminated petitioner's contracts effective August 27, 2001. After the issuance of the termination letter, respondent Board further advised petitioner that it had instructed the CSDs to look for alternative sites for their pre-kindergarten students who had been attending petitioner's programs. The Board also advised petitioner that if DOH restored its permits the CSDs could utilize its services provided that alternative providers had not been obtained and subject to certain other specified conditions. In late August and early September 2001, petitioner advised the Board that it had obtained DOH permits for all but one of its sites, but by that time the affected CSDs had already arranged for other providers. As a result, respondent Board did not enter into any new contracts with petitioner.

Petitioner commenced this CPLR article 78 proceeding against the Board of Education and the four affected CSDs seeking an order, inter alia, directing respondents to enroll students in its program. Supreme Court granted the petition to the extent of finding that respondent Board had improperly terminated petitioner's contracts without factual or legal justification and without a hearing. After granting respondents' motion to renew and reargue, the court adhered to its original determination. We reverse.

It is a well-established principle of law that when a contract affords a party the unqualified right to limit its life by notice of termination that right is absolute and will be upheld in accordance with its clear and unambiguous terms (*New York Tel. Co. v Jamestown Tel. Corp.*, 282 NY 365, 373 [1940]; *Crown Point Iron Co. v Aetna Ins. Co.*, 127 NY 608, 615 [1891]). "A party has an absolute, unqualified right to terminate a contract on notice pursuant to an unconditional termination clause without court inquiry into whether the termination was

activated by an ulterior motive" (*Big Apple Car v City of New York*, 204 AD2d 109, 111 [1994]). Such a termination is enforceable regardless of the cause of termination (*A.S. Rampell, Inc. v Hyster Co.*, 3 NY2d 369, 382 [1957]). A contract terminable without cause does not give rise to a protected property interest (*see S & D Maintenance Co. v Goldin*, 844 F2d 962 [2d Cir 1988]), such as would afford the right to a hearing as to the propriety of the termination.

Supreme Court incorrectly read the contract as permitting termination for cause only. Other than the unconditional termination clause, the other pertinent provision as to termination permitted respondent to cancel the contract on one day's notice if a violation creating a hazardous condition for the students existed. That clause, however, is not the one at issue here. Given the absence of any showing that petitioner's termination was other than contractual pursuant to an unqualified right, petitioner had no right to a hearing (*Matter of Farmacia Honeywell v DeBuono*, 275 AD2d 206 [2000]).

Since respondent's decision to terminate the contract was an exercise of a contractual right not subject to judicial review, the petition must be dismissed. In any event, quite apart from the unfettered right to terminate, the decision to terminate had a rational basis, i.e., the DOH's order revoking petitioner's permits and directing the closing of its facilities, and was not arbitrary, capricious or violative of law. And, as the contract provided, the decision to procure services from other providers rested solely with the CSDs. Concur—Mazzarelli, J.P., Saxe, Sullivan, Williams and Gonzalez, JJ.