| **Grand Cent. Neighborhood Social Servs. Corp. v Park** |
| 2024 NY Slip Op 33292(U) |
| September 18, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 155327/2024 |
| Judge: Lynn R. Kotler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. LYNN R. KOTLER**                    PART                    **08**

*Justice*

------------------------------------------------------------------X

GRAND CENTRAL NEIGHBORHOOD SOCIAL SERVICES
CORP., MAINCHANCE

|  |  |
|---|---|
| INDEX NO. | 155327/2024 |
| MOTION DATE | 06/11/2024 |
| MOTION SEQ. NO. | 001 |

Petitioner,

- v -

COMMISSIONER MOLLY WASOW PARK, NEW YORK
CITY DEPARTMENT OF HOMELESS SERVICES,
DEPARTMENT OF HOMELESS SERVICES,

Respondent.

**DECISION, ORDER +
JUDGMENT**

------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 33, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61

were read on this motion to/for                    INJUNCTION/RESTRAINING ORDER                    .

Upon the foregoing documents, this motion is decided as follows. In this special

proceeding, petitioners Grand Central Neighborhood Social Services Corp. ("GCNSSC") and

Mainchance seek an order enjoining respondent Department of Homeless Services ("DHS")

from terminating the parties' contract to operate the Mainchance Drop-In Center

("Mainchance"). Mainchance, which is located at 120 East 32nd Street, has operated for 25 years

and sees approximately 45,000 visits per year. GCNSSC and Mainchance (collectively, the

"Petitioners") argue that DHS arbitrarily terminated the contract.

Respondents are DHS, DHS Commissioner Molly Wasow Park and The New York City

Department of Social Services. Respondents have answered the petition and contend that the

contract provides an unconditional right to terminate, that they had a reasonable basis to

155327/2024   GRAND CENTRAL NEIGHBORHOOD SOCIAL SERVICES CORP. ET AL vs.
COMMISSIONER MOLLY WASOW PARK, NEW YORK CITY DEPARTMENT OF HOMELESS
SERVICES ET AL
Motion No. 001

Page 1 of 9

1 of 9

terminate the contract, and that Petitioners lack standing to assert the claim on behalf of Mainchance clients. For the reasons that follow, the petition is granted.

Facts

The relevant facts are not in dispute. Mainchance provides services to the homeless, including meals, showers and professional services, and an overnight sleeping space for their clients to sleep on a first come/first serve basis. Mainchance was started by GCNSSC in 1989 to provide 24/7 services to the homeless in Midtown Manhattan. Mainchance offers 70 recliners for overnight clients, many of them repeat clients, and serves meals to about 300 individuals as well as providing other mental and medical services during the day. Mainchance does not offer long term beds but does assist in placing clients in temporary and permanent housing.

Mainchance receives almost all of its funding (over 95%) from DHS and entered into its most recent contract with DHS on June 15, 2023, ending on June 30, 2026 (the "Contract"). The Contract includes a termination clause that states: "The City shall have the right to terminate this Agreement, in whole or in part, without cause, in accordance with the provisions of Section 10.05." Section 10.05 of the Contract provides that upon termination without cause, the City must provide Petitioners with at least 15 days' notice.

DHS annually audits Mainchance, which received ratings of "excellent" and "good" across all categories from 2021 through 2023. In October of 2023, DHS expanded Mainchance's offerings to include medical and psychiatric services performed by NYU Langone staff on site. Mainchance also provided a September 6, 2022 letter from DHS showing they exceeded their placement performance for the year, placing 170 transitional and 25 permanent placements, exceeding their targets of 138 transitional and 21 permanent placements.

155327/2024   GRAND CENTRAL NEIGHBORHOOD SOCIAL SERVICES CORP. ET AL vs. COMMISSIONER MOLLY WASOW PARK, NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES ET AL
Motion No. 001

Page 2 of 9

2 of 9

On September 26, 2022, DHS sent a letter to Mainchance's Deputy Executive Director Jaqueline Connor ("Connor") which stated that in 2022 Mainchance had 180 transitional placements and 28 permanent placements and set 2023 target numbers at 196 and 26 respectively. This letter also raised a complaint by a nonparty that Mainchance had turned a person away because they were using plastic bags instead of luggage. DHS advised Mainchance that it must allow clients three days to get a proper bag or provide one. On October 26, 2022, DHS sent another letter to Mainchance regarding an issue where Mainchance made their showers unavailable to run a food pantry out of the drop-in center that was serving non-homeless individuals using DHS funds in violation of the Contract. On December 1, 2022, DHS sent an additional letter containing complaints that staff were not letting drunk clients in during midnight/overnight shifts. The letter directed Mainchance to ensure that drunk clients were let in unless "they are a fighting drunk and belligerent."

A July 31, 2023 letter discusses the semiannual evaluation of placement targets. In this letter, DHS states that Mainchance had reached 14 permanent placements and 138 transitional placements, 54% and 70% of their respective targets for the year. A January 31, 2024 letter provided another update on placement targets, where the target for permanent and transitional placements was set at 151 but only 51 total placements were made (34%). This letter did note that the Routine Site Review Inspection conducted on 8/2/23 resulted in "Very Good" ratings for both the site as a whole and for the food.

DHS also provided a series of letters sent between October 2023 and February 2024 discussing issues with Mainchance's data entry of clients in their "CARES" system. The Contract requires that the nightly roster of clients, any permanency plans, and any other clients entering the facility be entered into the CARES system for tracking.

155327/2024  GRAND CENTRAL NEIGHBORHOOD SOCIAL SERVICES CORP. ET AL vs.      Page 3 of 9
COMMISSIONER MOLLY WASOW PARK, NEW YORK CITY DEPARTMENT OF HOMELESS
SERVICES ET AL
Motion No. 001

3 of 9

[* 3]

As compared to drop-in centers, DHS also provides funding to organizations that operate so-called "safe havens", which offer similar services. However, instead of chairs for clients to sleep in, safe havens have beds. The parties do not dispute that New York City is facing a housing crisis with an uptick in homeless individuals seeking shelter. DHS represents that it desires to shift from drop-in centers to safe havens to better serve the needs of homeless in the city. Petitioners point out, however, that Mainchance is the only drop-in center respondents seek to close.

Mainchance claims that on January 16, 2024, DHS Deputy Director Joslyn Carter telephoned Connor to inform her that DHS would be terminating the Contract on June 30, 2024. The following day, DHS Chief of Staff Erica Dean purportedly discussed with Connor the opportunity to convert Mainchance into a Safe Haven facility. In another conversation on January 18, 2024, Connor spoke to DHS Associate Commissioner of Capacity, Planning and Development Ellery Gillette who allegedly agreed to consider a conversion with the landlord's willingness to perform the necessary renovations.

Working with the landlord, Mainchance submitted a Request for Proposal ("RFP") to DHS on February 29, 2024 with their plans to convert the drop-in center to a safe haven. Petitioners' plans "only required installation of a sprinkler system, improved emergency egress through the rear of the building, and one additional bathroom." Mainchance maintains that it would be possible to remain in operation as a DIC during renovations, lasting approximately three months. DHS counters, claiming that Mainchance would need close during the "years, not months to complete the proposed renovation" and a new Certificate of Occupancy would be needed to change the use type of the property. On March 7, 2024, DHS denied the RFP and reiterated that the Contract would be terminated on June 30, 2024.

155327/2024 GRAND CENTRAL NEIGHBORHOOD SOCIAL SERVICES CORP. ET AL vs. COMMISSIONER MOLLY WASOW PARK, NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES ET AL
Motion No. 001

Page 4 of 9

4 of 9

Mainchance submitted additional materials to support their RFP on May 8, 2024, which included blueprints for the conversion and an itemized construction proposal prepared by B&G Construction which totaled $490,000. On the same day, DHS sent a letter terminating the Contract as of June 30 "without cause."

Petitioners commenced this CPLR Article 78 proceeding on June 14, 2024 seeking an order to enjoin Respondents from terminating the contract. Petitioners argue that respondents' decision to terminate the contract is irrational, arbitrary, and capricious. Meanwhile, respondents contend that they had "numerous reasons for termination, including budgetary constraints impacting New York City as a whole, Mainchance's failure to meet its contractual placement targets, numerous site difficulties, failures to comply with recordkeeping requirements from 2022 to 2024, and DHS's internal assessment of how to better serve its clients."

On July 16, 2024, the Court signed the underlying Order to Show Cause which granted a Temporary Restraining Order enjoining DHS from terminating the Contract and withholding funding from Petitioners.

In their answer, respondents argue that forcing them to honor the Contract would be "usurping the role of DHS to deal with complex issues of providing adequate shelter to its clients experiencing homelessness" while simultaneously disregarding the needs of the very homeless they claim to be operating in the best interest of.

Discussion

In an Article 78 proceeding, the applicable standard of review is whether the administrative decision: was made in violation of lawful procedure; affected by an error of law; or arbitrary or capricious or an abuse of discretion, including whether the penalty imposed was an abuse of discretion (CPLR § 7803 [3]). An agency abuses its exercise of discretion if it lacks a

155327/2024   GRAND CENTRAL NEIGHBORHOOD SOCIAL SERVICES CORP. ET AL vs.
COMMISSIONER MOLLY WASOW PARK, NEW YORK CITY DEPARTMENT OF HOMELESS
SERVICES ET AL
Motion No. 001

Page 5 of 9

5 of 9

rational basis in its administrative orders. "[T]he proper test is whether there is a rational basis for the administrative orders, the review not being of determinations made after *quasi*-judicial hearings required by statute or law" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck. Westchester County*, 34 NY2d 222, 231 [1974]) (emphasis removed); *see also Matter of Colton v. Berman*, 21 NY2d 322, 329 (1967).

"[T]here are circumstances in which the same governmental action may constitute a violation of contract and also be of a character that would support a claim for article 78 relief" (*Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d 1, 7-8 (1997 quoting Matter of Goodstein Constr. Corp. v Gliedman, 117 AD2d 170, 176 [Sandler, J. P., concurring]), affd 69 NY2d 930]). Therefore, petitioners may challenge respondents' contract termination as arbitrary and capricious pursuant to CPLR Article 78.

DHS contends that it has an "absolute right" to terminate the Contract without cause pursuant to the termination clause. While DHS did reserve to itself the right to terminate the Contract, this does not give it the right to do so in an arbitrary and capricious manner.

"A party has an absolute unqualified right to terminate a contract on notice pursuant to an unconditional termination clause without court inquiry into whether the termination was activated by an ulterior motive" (*Big Apple Car v City of New York*, 204 AD2d 109, 111 [1st Dept 1994]), Respondents rely upon *Red Apple Child Dev. Ctr. v Community School Dists. Two* which held that "[a] contract terminable without cause does not give rise to a protected property interest, such as would afford the right to a hearing as to the propriety of the termination (303 AD2d 156, 157 [1st Dept 2003] [internal citations omitted]).

*Red Apple* is distinguishable, however, because in that case the First Department had determined that "the decision to terminate had a rational basis, i.e., the DOH's order revoking

155327/2024  GRAND CENTRAL NEIGHBORHOOD SOCIAL SERVICES CORP. ET AL vs.
COMMISSIONER MOLLY WASOW PARK, NEW YORK CITY DEPARTMENT OF HOMELESS
SERVICES ET AL
Motion No. 001

Page 6 of 9

[* 6]

petitioner's permits and directing the closing of its facilities, and was not arbitrary, capricious or violative of law." Further, *Big Apple* dealt with a contract claim for monetary damages for bad faith and wrongful termination rather than an Article 78 claim alleging that the action was arbitrary. This court does not dispute that unconditional termination clauses are a powerful tool for the government to operate in an efficient and nimble manner, but they must still have a rational basis and not be otherwise arbitrary, capricious, or violative of law.

DHS also cites *The Institute for Puerto Rican/Hispanic Elderly v. The New York City Department for the Aging*, which was an Article 78 proceeding dismissed by Justice Manuel J. Mendez because the contract in question had an unconditional termination clause (2012 WL 6682148 [Sup Ct, NY County 2012]). However, *Institute* is also distinguishable from the facts of this case. While both contracts contained an unconditional termination clause, the reasons for exercising the clause vary immensely. In *Institute*, the petitioner which operated the Corvello Center since 1991, had recently renewed its contract with the respondent New York City Department for the Aging ("DFTA"). DFTA renewed the contract with the petitioner because they were in the process of selecting candidates to submit bids to run the site, with the intention of selecting the candidate with the highest rating after considering each of the bids (*id.*). Of the three approved vendors that submitted bids, the petitioner had the lowest rating and another bidder Carter Burden, who received the highest score, was awarded the new contract, which resulted in termination of petitioner's contract (*id.*). Therefore, Justice Mendez found that DFTA had proffered a rational basis to terminate the subject contract.

While DHS asserts in this proceeding that they do not need a rational basis to terminate the Contract, the court in *Institute* specifically pointed out "[r]espondents provided a rational basis for their determination and have not acted arbitrarily or exceeded their authority by

155327/2024   GRAND CENTRAL NEIGHBORHOOD SOCIAL SERVICES CORP. ET AL vs.
COMMISSIONER MOLLY WASOW PARK, NEW YORK CITY DEPARTMENT OF HOMELESS
SERVICES ET AL
Motion No.  001

Page 7 of 9

entering into a contract with Carter Burden" (*id.*). Petitioners signed a contract knowing the possibility they would lose the bid process and be replaced, whereas here, the DHS has no plan in place to replace Mainchance with an alternative shelter, essentially reducing the aid provided to persons suffering housing insecurity based upon the preference for safe havens over drop-in centers. Yet respondents do not point to a new safe haven that will serve the community petitioners have served for the past 25 years.

Relatedly, the Court is unpersuaded by respondents' alternative argument that their decision to terminate the Contract is not irrational, arbitrary, or capricious. Respondents have not explained why Mainchance is the only drop-in center which petitioners seek to close. Moreover, the next planned facility to serve unsheltered persons in Manhattan is not a safe haven, but another drop-in center to be located on 9th Avenue and 52nd Street. Further, DHS' "solution" to closing down Mainchance is not to replace it with a safe haven, but rather to redirect these clients to existing facilities in other boroughs such as the Bronx. While Mainchance may have been below the placement targets in 2023, they exceeded these targets in 2022 and otherwise maintained high ratings as evidenced by DHS audits from 2020 through 2023. Additionally, DHS entered into a separate contract with Petitioners to open a sanctuary for migrants in Queens on May 24, 2024. Finally, respondents fail to address the plethora of other services Mainchance provides including meals, showers, mental and physical medical care, in addition to the expanded services which NYU Langone began provided to petitioner's clients at Mainchance in October 2023. For all these reasons, the court finds that respondents' decision to terminate the Contract lacked a rational basis and is otherwise arbitrary and capricious.

155327/2024  GRAND CENTRAL NEIGHBORHOOD SOCIAL SERVICES CORP. ET AL vs.
COMMISSIONER MOLLY WASOW PARK, NEW YORK CITY DEPARTMENT OF HOMELESS
SERVICES ET AL
Motion No.  001

Page 8 of 9

Petitioners also claim that respondents have violated Mainchance's clients' rights to shelter under the New York State Constitution and the Callahan Consent Decree. In light of the result reached by the court herein, the court declines to consider this argument as moot.

**Conclusion**

Accordingly, it is hereby

ORDERED and ADJUDGED that the petition is granted and respondents are enjoined from terminating the contract with petitioner Grand Central Neighborhood Social Services Corp dated June 15, 2023 to provide services for homeless individuals at the Mainchance Drop-In Center located at 120 East 32nd Street, New York, New York; and it is further

ORDERED and ADJUDGED that respondents are compelled to provide funding for Mainchance Drop-In Center's operations consistent with the terms of the contract which expires on June 30, 2026.

Any requested relief not expressly addressed herein has nonetheless been considered and is hereby denied and this constitutes the decision, order and judgment of the court.

| 9/18/2024 | | | | |
|---|---|---|---|---|
| **DATE** | | | **LYNN R. KOTLER, J.S.C.** | |
| **CHECK ONE:** | X CASE DISPOSED | | NON-FINAL DISPOSITION | |
| | X GRANTED | DENIED | GRANTED IN PART | OTHER |
| **APPLICATION:** | SETTLE ORDER | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**155327/2024   GRAND CENTRAL NEIGHBORHOOD SOCIAL SERVICES CORP. ET AL vs.
COMMISSIONER MOLLY WASOW PARK, NEW YORK CITY DEPARTMENT OF HOMELESS
SERVICES ET AL
Motion No. 001**

**Page 9 of 9**

[* 9]

9 of 9